## TOMMY LEE COE

### V.

## COMMONWEALTH OF VIRGINIA

Record No. 841866

March 7, 1986

Present: All the Justices

C. *David Whaley (Morchower, Luxton and Whaley*, on brief), for appellant.
*Margaret Poles Spencer, Assistant Attorney General (William G. Broaddus, Attorney General*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

Indicted for conspiring during the period January 1 through June 1, 1983 to distribute more than five pounds of marijuana, defendant Tommy Lee Coe was convicted of the charge in a September 1984 jury trial. Confirming the verdict, the trial court sentenced defendant to confinement in the penitentiary for 20 years. We limited defendant's appeal to consideration of two evidentiary questions.

The evidence showed that defendant and a group of other men agreed to travel from Virginia to Indiana, procure a large quantity of marijuana, return to Virginia, and distribute the substance at a profit. The men departed in late January or early February 1983 from defendant's Chesterfield County home. Traveling in two automobiles, the group went to South Bend, Indiana, picked up approximately 100 pounds of marijuana, and loaded it into one of the vehicles. The men returned to defendant's home with the substance, expecting to make a $10,000 net profit from sale of the contraband. The vehicle used to transport the marijuana was registered in the name of one Rae Roeban. She was a female companion of defendant with whom he lived during the period of the conspiracy.

The Commonwealth relied on testimony from two of the conspirators, James Andrew Glascock and George Goolsby, to establish a case against defendant. The prosecutor also introduced in evidence a tape recording of a telephone conversation between defendant and Glascock and Goolsby. The recording was made July 31, 1984 when defendant placed a call from jail to the other two, who were together at one location. Some segments of the conversation were excised from the tape by agreement between the pros-

ecutor and defense counsel. The edited tape was played for the jury.

During the conversation, defendant discussed the criminal transaction and inquired of Glascock and Goolsby about the extent of the prosecutor's knowledge of the activities of the group. At times during the extended, rambling telephone discussion, defendant encouraged the others to falsify their testimony about the enterprise. Even though defendant did not specifically admit being involved in the conspiracy, he never denied being in South Bend or participating in the transaction. Instead, he stated the police had "nothing on" him that would "stick" because no person saw him in possession of the contraband.

Over objection of defendant, the trial court permitted the jury to hear the following portion of the discussion with Glascock pertaining to defendant's female companion:

"Glascock: I seen Rae the other day.

"Defendant: Yeah.

"Glascock: I didn't talk to her, though.

"Defendant: I cut her a-loose.

"Glascock: Yeah, James said something about that — she had just went out of town.

"Defendant: Huh?

"Glascock: James said something about that, she had just went out of town.

"Defendant: She had just went out of town.

"Glascock: Yeah, she just left, and went out of town, whatever.

"Defendant: Yeah, she won't getting business taken care of and getting things done, and I told her I'd put somebody else in her place. You know, I'm in here and I need somebody to run somebody down and get things done. She'd fimble, fumble and fuck around. I just took everything away from her. Put her ass out on the street. Woman don't mean a mother fucking thing to me, buddy, if they ain't on their toes."

In addition, the Commonwealth presented the testimony of Detective Douglas J. Radican of the South Bend Police Department. The trial court admitted, over defendant's objection, the following portion of Radican's direct examination:

"Q. Is there a drug problem [in South Bend], sir?

"A. Yes, there is.

"Q. Is there a manufacturing there of certain types of drugs?

"A. Yes, there is.

"Q. What types?

"A. Basically marijuana. We have labs for psilocybin and LSD. But, basically marijuana.

"Q. How large scale is marijuana manufactured, produced or grown there?

"A. The area surrounding South Bend Indiana, several counties there . . . in World War II, marijuana was grown for production of hemp.

"And in our area there is a large amount of marijuana that still grows wild. And there is also cultivation for sale."

On appeal, defendant contends the trial court committed reversible error by admitting the comments about the female companion and the testimony about drug conditions in South Bend. Regarding the Roeban comments, defendant points out that his statement was made more than 12 months after the conspiracy is alleged to have ended. He asserts that information about his treatment of a woman at that time was not relevant to a determination of whether he conspired to distribute marijuana one year earlier. Defendant says there is no logical connection between his relationship with the woman and his involvement in the crime charged. The admission of the segment's last sentence containing the sexist comment about women in general was particularly egregious, argues defendant, because seven of the twelve jurors were women.

The Attorney General argues the Roeban conversation was relevant evidence and properly admitted by the trial court. The Commonwealth says that the comments were corroborative of much of the testimony of the co-conspirators. Such corroboration was important, according to the Attorney General, because the jury was instructed that the testimony of a co-conspirator must be "received with great care and caution." According to the Commonwealth, the comments confirmed the association between defendant and Roeban, the apparent owner of the vehicle used to transport the marijuana, and indicated that she was involved in defendant's marijuana distribution "business." Regarding the final comment about women generally, the Attorney General argues

the statement should be considered in context with defendant's entire telephone conversation. The full telephone discussion, the Commonwealth asserts, shows defendant to be a "calculating conspirator" who boasted he would receive a minimum five-year sentence, if convicted, and that he could "do" the incarceration because he was unafraid of the prosecutor. Consequently, the Attorney General says, the single comment about women generally would have no significant impact on the jury in this case.

■ Evidence which bears upon and is pertinent to matters in issue, and which tends to prove the offense, is relevant and should be admitted. However, evidence of collateral facts and facts incapable of supporting an inference on the issue presented are irrelevant and cannot be accepted in evidence. Such irrelevant evidence tends to draw the jurors' attention toward immaterial matters and, if such evidence deals with misconduct of the accused, may tend to prejudice the jurors against the defendant. Nevertheless, evidence which tends to prove the crime charged is admissible though it may necessarily involve misconduct on the part of the defendant. *Bunting* v. *Commonwealth*, 208 Va. 309, 314, 157 S.E.2d 204, 208 (1967); *Boggs* v. *Commonwealth*, 199 Va. 478, 486, 100 S.E.2d 766, 772 (1957).

■ But when relevant evidence is offered which may be inflammatory and which may have a tendency to prejudice jurors against the defendant, its relevancy "must be weighed against the tendency of the offered evidence to produce passion and prejudice out of proportion to its probative value." *State* v. *Flett*, 234 Or. 124, 127, 380 P.2d 634, 636 (1963). The responsibility for balancing these competing considerations is largely within the sound discretion of the trial judge. *Id. See Seilheimer* v. *Melville*, 224 Va. 323, 327-28, 295 S.E.2d 896, 898-99 (1982); *Peacock Buick* v. *Durkin*, 221 Va. 1133, 1136, 277 S.E.2d 225, 227 (1981). *Cf. Crowson* v. *Swan*, 164 Va. 82, 92, 178 S.E. 898, 903 (1935) (trial court has no discretion to admit clearly inadmissible evidence because "admissibility of evidence . . . depends not upon the discretion of the court but upon sound legal principles." 164 Va. at 92, 178 S.E. at 903). And a trial court's discretionary ruling will not be disturbed on appeal absent a clear abuse of discretion. *Clozza* v. *Commonwealth*, 228 Va. 124, 135, 321 S.E.2d 273, 280 (1984), *cert. denied*, 469 U.S. 1230 (1985); *Spruill* v. *Commonwealth*, 221 Va. 475, 485, 271 S.E.2d 419, 425 (1980).

■ In the present case, we hold the Roeban conversation was relevant. The evidence tends to connect defendant to Roeban and her automobile, a principal instrumentality of the conspiracy. The evidence also tends to corroborate the co-conspirators' testimony on the relationship between Roeban and defendant, on the use of her vehicle to travel to South Bend, and on employment of her automobile to transport the marijuana to Chesterfield County.

■ In addition, we cannot say the trial court erred by admitting the potentially inflammatory final sentence of the Roeban segment. Reasonable trial judges and even some members of this Court, had they been sitting as trial judges in this case, might have excised the last sentence of the conversation because of its tendency to prejudice the jury. Nevertheless, such a consideration is not pertinent at this stage of the proceeding because settled appellate criteria prevent us from declaring the ruling erroneous unless there has been a *clear* abuse of discretion, and there has been no such plain abuse here. *See Noll* v. *Rahal*, 219 Va. 795, 801-02, 250 S.E.2d 741, 745 (1979).

Upon the second issue, the Attorney General argues that the trial court did not err in admitting the detective's testimony about the availability of large quantities of marijuana in South Bend. We agree.

■ The Commonwealth sought to prove that the conspiracy involved travel from Virginia to South Bend to procure a large supply of marijuana. The fact that the conspirators' out-of-state destination was a place where a substantial quantity of the contraband was readily available was pertinent and relevant to establish the terms of the unlawful agreement and to corroborate the other testimony that the defendant did, in fact, travel to South Bend in furtherance of the criminal enterprise.

Defendant's reliance on *Smith* v. *Commonwealth*, 217 Va. 336, 228 S.E.2d 562 (1976), is misplaced. There, we held that the presence of the defendant at a particular street intersection hundreds of times within six months before his arrest and "the reputation of the intersection as a place for illegal drug violations [had] no relevancy to the charge that defendant possessed heroin with intent to distribute." 217 Va. at 337, 228 S.E.2d at 562. But in *Smith*, no drugs were found on defendant's person when he was arrested. Except for the fact that the police observed defendant engaged in suspicious activity at the scene just before his arrest, no other evidence was presented to prove the charge against de-

fendant. In contrast, there was abundant other evidence to establish the conspiracy charge in this case and the fact of drug availability in South Bend tended to prove that defendant was there because he was procuring drugs in accordance with the agreement.

Consequently, defendant's judgment of conviction will be

*Affirmed.*

STEPHENSON, J., dissenting.

The defendant was tried by a twelve-member jury. Seven of the jurors were women. These jurors were responsible not only for determining the defendant's guilt or innocence, but for fixing his punishment. In this setting, the trial court permitted the Commonwealth to prove that the defendant said, "Woman don't mean a mother fucking thing to me, buddy, if they ain't on their toes."

I believe that this portion of the defendant's statement was wholly irrelevant and highly inflammatory, and that the failure of the trial court to excise that portion of the statement constituted reversible error. As we said in *Bunting* v. *Commonwealth*, 208 Va. 309, 314, 157 S.E.2d 204, 208 (1967), "Evidence which has no tendency to prove guilt, but only serves to prejudice an accused, should be excluded on the ground of lack of relevancy." Therefore, I would reverse the judgment and remand the case for a new trial.