COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Bumgardner and Frank

DAVID MARK HALES

                                             MEMORANDUM OPINION[*] BY

v.      Record No. 3226-03-3          JUDGE RUDOLPH BUMGARDNER, III
                                             DECEMBER 28, 2004

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
John J. McGrath, Jr., Judge

(Kathleen M. Mizzi Todd, on brief), for appellant. Appellant
submitting on brief.

(Jerry W. Kilgore, Attorney General; Virginia B. Theisen, Assistant
Attorney General, on brief), for appellee. Appellant submitting on
brief.

David Mark Hales appeals convictions of grand larceny, breaking and entering, and

unlawful wounding resulting from two separate jury trials. In each trial, he contends the trial

court erroneously admitted evidence of other crimes. For the following reasons, we affirm.

The defendant was charged with three sets of crimes: breaking and entering, and grand

larceny occurring on December 2, 1999; abduction and assault and battery occurring on May 10,

2000; and malicious wounding occurring on May 11, 2000. The trial court set separate jury trials

by grouping the offenses by date. The felony indictments were not returned until January 2003,

and the trials were not held until May, June, and August 2003. The defendant was only granted

an appeal from the first two trials.

All of the charges involved the defendant and Jerri Lynn Vance, and she was the

principal witness for the Commonwealth in all three trials. Though the defendant intermingles

          [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and blends his complaints of error throughout his brief, we review the incidents of the trials separately.[1]

The first trial heard the charges of breaking and entering, and grand larceny, which arose December 2, 1999. At the time of the offense, Jerri Vance was the defendant's girlfriend and accomplice. She testified that she went with the defendant to an unfinished house where he stole a Jacuzzi. The Commonwealth's Attorney asked Vance why she accompanied the defendant. She responded, "I didn't participate. I was in fear of him, plus I was on drugs and I was scared." She continued that she and the defendant were using methamphetamine and marijuana and the thefts provided money for their drugs. She reiterated her fear of the defendant and added, "Because he beat me a lot." For the first time, the defendant raised an objection.

The defendant argued the reason that Vance participated was irrelevant and "unimportant" because Vance was not on trial. The Commonwealth responded that the defendant opened the door to Vance's motivation during his opening statement, and the trial court overruled the objection. The Commonwealth next asked how often the defendant beat her, the defendant objected,[2] and the trial judge ruled, "I think we've gone far enough into it."

The Commonwealth's Attorney then changed subjects to how the witness came to inform the police about the theft of the Jacuzzi. She asked why Vance had not reported the offense until May 2000, and Vance answered that she was in the hospital. Asked, "Why were you in the hospital?" Vance replied, "He stabbed me in the throat." The defendant objected, and the trial court sustained the objection.

---

[1] To the extent the defendant maintains that the Commonwealth engaged in prosecutorial misconduct, that issue was not raised before the trial court and was not an issue granted on appeal. Rule 5A:18.

[2] Before the defendant interposed his objection, Vance had answered, "Whenever he was mad." The defendant never moved to have the remark stricken or disregarded.

The defense cross-examined Vance extensively about her motive to testify and her bias against the defendant. When asked, "You don't like Mark, do you?," Vance responded, "I did at one time. I used to love him." When defense counsel retorted that Vance had not spoken to the defendant in three years, Vance replied, "Since the day he stabbed me is the last time I saw him."[3]

Defense counsel also asked whether Vance had received favors for testifying for the Commonwealth since she was not charged in the instant offense. Vance responded, "I don't owe them nothing, they don't owe me nothing." Vance admitted she was a drug addict with a criminal record involving lying, cheating, or stealing. She also maintained that the defendant sold drugs and they engaged in criminal behavior to support their drug use. She rented trucks that the defendant used in several burglaries.

The defendant contends the trial court erred in admitting the statements that the defendant beat and stabbed Vance. "Evidence that shows or tends to show a defendant has committed a prior crime generally is inadmissible to prove the crime charged." Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998). If the evidence tends to prove any element of the offense it may be admitted as an exception to this rule. Id.

The contested statements were admissible to support Vance's credibility and explain her presence at the scene of the offense. Vance's credibility was the paramount issue as the defense had made abundantly clear during the opening argument: "I want you to pay attention closely to what they're saying, why they're saying it, why they're here." The defendant argued that Vance

---

[3] At the conclusion of cross-examination, defense counsel asked Vance about taking the police to the house where the Jacuzzi was stolen. Vance answered she took the investigator "to where the Jacuzzi was . . . and to the house where I got stabbed . . . ." The defendant made no objection.

falsely made the accusations because she was in trouble and in jail. She was angry with the defendant, disliked him, and was out to get him.

When a witness is an accomplice, "the presumption of truthfulness no longer prevails, the witness stands impeached, and evidence enhancing credibility, if otherwise competent, is admissible." Largin v. Commonwealth, 215 Va. 318, 319, 208 S.E.2d 775, 776 (1974). The credibility of an accomplice's testimony "is a significant factor in the jury's determination of the accused's level of culpability." Lilly v. Commonwealth, 258 Va. 548, 553, 523 S.E.2d 208, 210 (1999).

The Commonwealth was entitled to explain Vance's relationship with the defendant. At the time of the crime, Vance and the defendant were living together, yet she incriminated him and was the primary prosecuting witness against him. The defendant's abusive conduct explained and validated her claim of fear. The stabbing illustrated the extent of his abuse and the reality of her fear. It resolved the questions of why their relationship severed and why she testified against him. The defendant does not have the right to sanitize the evidence. Scott v. Commonwealth, 228 Va. 519, 526-27, 323 S.E.2d 572, 577 (1984).

The admission of evidence is within the broad discretion of the trial court. Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986). Relevant evidence is admissible "though it may necessarily involve misconduct on the part of the defendant" when its probative value outweighs potential prejudice to a defendant. Id. "And a trial court's discretionary ruling will not be disturbed on appeal absent a clear abuse of discretion." Id.

The trial court did not abuse its discretion in admitting evidence that bore on Vance's credibility. The evidence bore on the precise issues emphasized by the defense. It answered the defendant's arguments of why Vance was present at the crime and why she testified against him.

The trial court exercised its discretion by allowing the evidence but carefully limiting the extent to which the Commonwealth could pursue details of the stabbing and frequency of the beatings.

Even if the admission of the evidence were viewed as error, it would have been harmless error. During extensive cross-examination, the defendant elicited the same evidence of which he complains. In closing argument, defense counsel stressed that evidence, characterized it as prejudicial, and stated she drew the jury's attention to it "because that evidence was stricken by the court."[4] The defendant invited and acquiesced in the admission of the evidence. Sullivan v. Commonwealth, 157 Va. 867, 878, 161 S.E. 297, 300 (1931).

The second trial heard the charge of malicious wounding of Jerri Vance. The defendant had filed a notice of alibi defense stating he was in Charlottesville on May 10. He filed a motion *in limine* seeking to exclude any evidence of any assault of Vance occurring that day. The trial court declined to rule before the evidence was fully developed during trial, but it eventually admitted evidence that the defendant hit Vance the day before the stabbing.

The defendant and Vance were living together at Victor Knicely's house. On May 10, Knicely awoke to an argument between the defendant and Vance in his yard. He looked out his bedroom window and saw the defendant hit Vance in the face and then leave. That evening, Vance suspected the defendant had a relationship with Sherry Curry and telephoned her. Curry denied the defendant was with her. Early the next morning, Vance went to Curry's home and found the defendant asleep in her bed. The defendant and Vance had an argument, and then she left.

---

[4] The defendant contends the trial court failed to give a cautionary instruction. The defendant never requested a cautionary instruction or asked that the evidence be stricken when the trial court sustained his objection. Rule 5A:18. The trial court has no duty to instruct the jury *sua sponte* to disregard the evidence. "[A] defendant must request such an instruction where appropriate." Cheng v. Commonwealth, 240 Va. 26, 40, 393 S.E.2d 599, 607 (1990). Moreover, the trial court did instruct the jury to disregard rejected and stricken matters in its charge to the jury.

A few hours later, Vance returned to Curry's house. The defendant was alone, and they renewed their argument. Vance testified she fell to the floor, the defendant kicked her in the back and ribs, took out a pocketknife, and stabbed her in the throat. She did not call the police because she had absconded and was hiding from them. Vance did call Knicely on her cell phone and told him the defendant had stabbed her. Later, the defendant admitted to Knicely that he had stabbed Vance.

The defendant testified in his own defense. He was not at Knicely's house on May 10 and had not seen Vance for two days. He woke up in Curry's house on May 11 with Vance yelling and cursing at him. He remained calm and eventually got her to leave. The first time Vance returned, she threatened to hurt herself but left without incident. The next time she returned, she grabbed a steak knife and stabbed herself. The defendant admitted that he was an extremely combative person, that he regularly fought with Vance, and that sometimes their fights were physical.

When the evidence of criminal conduct is continuous and connected with the present offense, "[t]he fact-finder is entitled to all of the relevant and connected facts, including those which followed the commission of the crime on trial, as well as those which preceded it; even though they may show the defendant guilty of other offenses." Scott, 228 Va. at 526-27, 323 S.E.2d at 577. "Such evidence is permissible in cases . . . where the evidence is connected with or leads up to the offense for which the accused is on trial." Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970).

Evidence of the May 10 assault showed the flow of events from one day to the next. The quarrel on May 10 was unresolved, and the hostility between the parties continued to the next morning when it escalated into the stabbing. The stabbing was a continuation of the altercation that began the day before in Knicely's yard.

The Commonwealth had to prove the defendant acted with malice. The assault on May 10 illustrated the volatility of the defendant's relationship with Vance and demonstrated his continued violence toward her. It defined his intentions and refuted his claim that she stabbed herself. It was relevant and admissible. Clay v. Commonwealth, 262 Va. 253, 260-61, 546 S.E.2d 728, 732 (2001) (where defendant put intent in issue by claiming murder accidental, victim's state of mind is relevant and admissible to show her fear of him); Compton v. Commonwealth, 219 Va. 716, 729, 250 S.E.2d 749, 757 (1979) (when defendant claims death accidental, evidence of prior relationship between him and victim is relevant and admissible).

The decision to admit the evidence rested within the discretion of the trial court, and it did not abuse that discretion by admitting the evidence. Again the trial court carefully exercised its discretion by instructing *sua sponte* when the incident was mentioned by a second witness. The trial court instructed that the evidence was admitted "solely for the purpose to give the background of apparently what was a continuous flow here and explains the movements of the various parties throughout the balance of that day and the next day."

Finally, if the trial court erred, the admission is clearly harmless. A nonconstitutional error is harmless "if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (*en banc*). The verdict would not have changed if the trial court had excluded the evidence of the assault on May 10.

The evidence of the defendant's guilt was overwhelming. It included his own admission to Knicely that he stabbed Vance. The defendant conceded he was a combative person and he fought physically with Vance. Vance's injuries were consistent with her testimony about the stabbing. While the defendant denied he saw Vance May 10 and claimed she stabbed herself, the

jury could disbelieve his self-serving testimony and conclude he was lying to conceal his guilt.

Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

Accordingly, we conclude the trial court did not abuse its discretion in admitting evidence at either trial. Accordingly, we affirm.

Affirmed.