COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Felton and Haley
Argued by teleconference


MANSUR RAHNEMA

MEMORANDUM OPINION* BY
v.        Record No. 1199-05-1            JUDGE JAMES W. HALEY, JR.
                                          MARCH 14, 2006

SHAHLA RAHNEMA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Frederick B. Lowe, Judge

    James Ray Cottrell (Kyle F. Bartol; John K. Cottrell; Gannon &
    Cottrell, P.C., on briefs), for appellant.

    Kimberly L. Stegall (Glenn R. Croshaw; Peter V. Chiusano;
    Willcox & Savage, P.C., on brief), for appellee.


    In this proceeding, Mansur Rahnema ("husband") asserts that the trial court erred in the

following:  1) classifying the St. Edmunds Terrace property as marital, rather than separate, property

and failing to address rental income from the property; 2) classifying the High Mount property as

Shahla Rahnema's ("wife") separate property rather than marital property; 3) finding that the

spousal support payment required by the post-nuptial agreement was not satisfied; 4) failing to

address legal fees incurred by husband in connection with The Beeches property and husband's

argument that wife was the beneficial purchaser of said property; 5) applying $419,585 held by

husband's English solicitors to his share of the property division; 6) refusing to hear evidence on

federal income taxes incurred by disbursement of his pension plan account so that such costs could

be considered in the division of the marital estate; 7) failing to address husband's allegations that

wife improperly transferred marital funds into a separate account; 8) refusing to hear evidence on

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

wife's alleged conversion of marital property; and 9) failing to determine if money accidentally transferred into husband's retirement account instead of a corporate account should be returned. We affirm in part, reverse in part, and remand.

Facts

The parties married April 24, 1993 in Virginia Beach, Virginia. The marriage produced no children. On July 28, 1993, the parties entered into a post-nuptial agreement ("the Agreement") defining what property would constitute the marital estate in the case of a divorce and setting an amount for spousal support, among other provisions. The Agreement includes a schedule of husband's assets and declares that those assets, except for husband's medical practice, Virginia Beach Surgical Associates ("VBSA"), are marital property, even if owned prior to the marriage. Wife's assets obtained prior to the marriage remain her separate property. It also declares that all property acquired during the marriage shall be marital property and jointly owned regardless of the source of funds used to purchase and the titling of the property. In the event of a divorce, each spouse is to receive an equal share of the marital estate as defined by the Agreement following an inventory and valuation by the court. Should the divorce occur within the first five years, husband agreed to pay wife a lump sum of $100,000 in lieu of spousal support. Other provisions of the Agreement are irrelevant to these proceedings.

A later set of agreements, signed in 1994, purported to supplement the Agreement. Upon filing for a divorce in November 1997, husband attempted to have both the Agreement and the 1994 supplements declared unenforceable. The trial court ruled that the Agreement was enforceable but the supplements were not, and this Court affirmed that decision in Rahnema v. Rahnema, 2000 Va. App. LEXIS 163 (Mar. 7, 2000). The trial court granted the divorce on April 23, 1999.

While proceedings continued to divide the marital estate under the terms of the marital agreement, husband filed suit to have the marriage annulled on grounds of bigamy. The trial court

- 2 -

heard evidence on the matter and ruled the marriage was not bigamous and therefore not void, a ruling upheld by this Court in Rahnema v. Rahnema, ___ Va. App. ___, ___ S.E.2d ___ (Feb. 14, 2006).

Despite the pending annulment litigation, the trial court continued to hear evidence and address the division of the marital estate. Due to the scope of the Agreement, it controls all property division, superceding the equitable distribution statutes. After taking evidence for nearly eight years, the trial court ruled from the bench on March 25, 2005, a ruling partially memorialized in a written order May 4, 2005. Husband appeals from this ruling, the third time these parties have come before this Court.

Given the number of assignments of error and their fact specific nature, additional facts are presented within the discussion of each point.

### Standard of Review

Under familiar principles, we review the construction of a marital agreement *de novo*. Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 593 (1986). A trial court may not distribute property in a way that is inconsistent with a contract. Parra v. Parra, 1 Va. App. 118, 128, 336 S.E.2d 157, 162-63 (1985). The trial court's factual findings, however, when resulting from evidence heard *ore tenus*, will be reversed only when plainly wrong or without supporting evidence. Wheeler v. Wheeler, 42 Va. App. 282, 288, 591 S.E.2d 698, 701 (2004). Furthermore, we will consider the evidence in the light most favorable to wife as the prevailing party below. Galloway v. Galloway, 47 Va. App. 83, 86, 662 S.E.2d 267, 268 (2005) (citation omitted).

### St. Edmunds Terrace

During the marriage, wife purchased property in England at 28 St. Edmunds Terrace ("St. Edmunds") with marital funds, making it marital property under the Agreement. Concurrent with the proceedings in the trial court, the parties were involved in an English lawsuit with respect to

- 3 -

various transactions undertaken by wife and Ms. Panthea Ansari, her daughter from a previous marriage, concerning St. Edmunds. On January 13, 2004, the trial court entered an agreed order, tendered by wife, adopting the final order of the English court and specifically stating that husband's one-half interest in St. Edmunds "is declared to be separate property."

The Virginia trial court's final ruling, however, includes St. Edmunds as marital property that counts towards husband's one-half share of the marital estate on the schedule attached to the final order. Husband contends this ruling is in error, and we agree.

The January 13, 2004 order of the trial court settles the question by declaring St. Edmunds to be husband's separate property. Wife's acceptance that the remaining one-half interest in St. Edmunds is husband's separate property is not limited to that order, however. On October 17, 2003, wife's counsel reminded the trial court that the question of St. Edmunds' ownership was already settled by the English order. At that same time, the parties agreed that they must abide by the English decision because the trial court had no jurisdiction over real property in England. Furthermore, wife's brief concedes that the trial court "acknowledged that Ms. Ansari and Dr. Rahnema were the owners of the property and Ms. Rahnema lacked an interest therein."

In considering St. Edmunds to be marital property and applying its value towards husband's share of the marital estate, the trial court contradicted its own previous order and violated the clear terms of the Agreement, thereby abusing its discretion. Therefore, we reverse the trial court's final order, re-affirm that St. Edmunds is husband's separate property, and remand for a redistribution of the marital estate in accordance with this ruling.

Husband further contends that the trial court erred by not accounting for rents received by wife for St. Edmunds after the property became his and Ms. Ansari's separate from wife. While the English court order adopted by the trial court on January 13, 2004, declares that Ms. Ansari and husband split future rents, the trial court declined to consider the issue of rents as part of its

- 4 -

distribution of the marital estate. Given that all rents subject to the order were received after the parties' divorce and, therefore, are not subject to distribution under the Agreement, we see no error in the trial court's decision. Nor, however, do we, or does wife in her brief, see any decision of the trial court preempting husband's right to pursue any rents he is due in the appropriate venue.

High Mount Property

The trial court ruled that the High Mount property was wife's separate property rather than marital property under the terms of their agreement. Wife initially purchased High Mount in 1989. At some point, the property went into foreclosure until someone made a payment of £100,000 UK in 1995. At trial, the parties disputed who actually made this payment, with the trial court ruling that wife paid the sum. Finding this ruling to be plainly wrong, we reverse.

Wife's only evidence supporting this ruling is her own testimony that she paid the sum and an account statement showing a £100,000 UK transfer from her bank account to the Allied Irish Bank. She testified that this transfer was to her English solicitors in order to pay off the mortgage. Husband testified that he had paid the mortgage and presented letters from wife's solicitors acknowledging his payment of the £100,000 UK. Thus, the very people wife testified she transferred the money to in payment of the mortgage confirm that, in actuality, husband paid the mortgage. Wife's evidence, then, does nothing more than show a transfer of money between bank accounts, while husband offers conclusive proof of his payment.

Furthermore, both parties agree that the property was titled in husband's name after the payment before being retitled in wife's name. Wife's attorneys undertook the retitling for husband within a week of his having paid off the mortgage and as part of the same transaction. And while his having paid off the mortgage explains why the title was in his name, wife contends that after she paid off the mortgage, she titled the property in her husband's name because the "mortgage people" advised her to do so.

- 5 -

Given that wife's own English solicitors acknowledged husband's payment of the mortgage and that wife's evidence does nothing more than show a transfer of money between accounts, we conclude that the trial court's finding that wife paid the mortgage on High Mount was plainly wrong.

Having so found, the High Mount property must be part of the marital estate under the terms of the Agreement. The agreement provides that "[a]ll property which is acquired during marriage and prior to any separation of the parties . . . shall also be deemed marital property and shall be jointly owned." When husband paid the £100,000 UK to bring the property out of foreclosure and took title to the property, he acquired it from wife. Thus, what had previously been her separate property became marital property. We, therefore, reverse the trial court's finding that High Mount is wife's separate property and remand the division of the marital estate to the trial court for redistribution in accordance with this decision.

## Spousal Support

The Agreement requires that husband pay wife a lump sum of $100,000 in lieu of spousal support in the event that the parties separate or divorce within five years of marrying. Early in the divorce proceedings, the trial court ordered husband to pay his own and wife's attorneys each $100,000 out of the VBSA's account. If the court later found that the account was husband's separate property, the payment would satisfy his spousal support obligation, and if the account was found to be marital, the paired payments would constitute an equal division of marital property, leaving the spousal support unsatisfied.

Husband, however, paid the $100,000 from Charles Schwab Account #9089-8173, rather than the account specified by the court. The question for the trial court to rule on, then, was if that Charles Schwab account was marital or separate. While both sides briefed the issue, the trial court never ruled on whether the account was marital or separate. Instead, the court compounded its error

by confusing wife's alleged payment of £100,000 UK toward the High Mount mortgage with the $100,000 spousal support payment. It then concluded that since wife paid the £100,000 UK husband was still obligated to make the spousal support payment.

The trial court's ruling is clearly in error, as it confuses payments, accounts, and even the amount in question. In the end, the critical question of whether the Charles Schwab Account was marital or separate property remains unanswered. We, therefore, remand this question to the trial court for a determination as to whether the account in question was marital or separate.

### The Beeches

Husband's pension plan account, a marital asset, purchased as an investment an English property known as The Beeches. During the proceedings, each party was at some point under a court order to purchase the property from the pension plan. Neither party ever did so, and after a great deal of litigation both here and in England, the property was eventually sold to Mr. Cyrus Davari for £750,000 UK. Relating to this sale, husband makes two separate claims: 1) that the trial court erred in failing to reimburse him for expenses related to the maintenance and sale of The Beeches; and 2) that he should have been allowed to introduce additional evidence that wife was the *de facto* purchaser of the property. Finding insufficient evidence to support husband's contentions, we affirm.

Although husband claims to have not been reimbursed or credited for expenses relating to The Beeches, the trial court's orders show he received compensation numerous times. As to the other expenses not compensated by the trial court, we agree that husband failed to meet his burden of showing what the expenses were and how they were incurred. Furthermore, we find that the trial court did not err in declining to provide additional compensation to husband for those instances when the initial compensation he received went to satisfy debts to third parties. Certainly, no party should receive duplicate reimbursement for expenses simply because the

initial payments had to go to his creditors in accordance with English court orders. Finally, we note the trial court's suggestion that any additional litigation over these expenses occur in a different, more appropriate venue.

As to husband's contention that wife was the beneficial purchaser of the property, the trial court had sufficient evidence to reach its conclusion that she was not, in fact, the purchaser of the property. At the time it approved the contract, the trial court had read the agreement, received the required deposit, and received affidavits sufficient to prove that the money was Mr. Davari's and not wife's. Although these affidavits are not in the record, they were given at the specific request of the trial court, and we, therefore, defer to its decision to accept whatever documents were offered to fulfill its demands. We find no evidence whatsoever to support husband's contentions on this point except his own accusations. Given that over two years passed between the sale of The Beeches and the trial court's final ruling on the issue, we find husband's inability to provide any real evidence of misdeeds telling. Therefore, we affirm the trial court's decision.

£218,000 UK Held by Dean and Dean

Husband claims the trial court erred in including £218,000 UK held by his English solicitors, Dean and Dean, in his share of the property division. Dean and Dean received these funds in conjunction with the sale of The Beeches property and was ordered by the trial court multiple times to transfer this money into the pension plan account, from which its reasonable expenses could be reimbursed. The parties agree, however, that at no time did the trial court ever determine the appropriate amount for Dean and Dean's expenses and fees.

Faced with an English law firm that refused to obey its orders, the trial court chose to credit the entire £218,000 UK toward husband's share of the marital estate. As it is husband's attorneys who are holding the funds and the trial court's efforts to recover the funds have been

unsuccessful, the trial court had no choice but to distribute the funds in some way and allow the parties to explore alternative remedies outside the distribution proceedings. The court concluded that husband was in the best position to do so, and we see no clear error in that decision. Accordingly, we affirm the award of the funds held by Dean and Dean to husband.

Failure to Account for Federal Taxes Incurred by Court-Ordered Disbursements

During the lengthy proceedings in this case, the trial court occasionally ordered disbursements from husband's pension plan account. That money enabled the parties to cover living and trial-related expenses while the bulk of their accounts were frozen pending distribution. Throughout the course of the trial, both sides have agreed, and the court has encouraged, that the entry of a Qualified Domestic Relations Order (QDRO) could solve the problems of federal tax liability.

Neither side, however, has tendered such an order to the court so the problem remains. Because the trial court had jurisdiction to rule on the Agreement under Code § 20-107.3(I) (allowing the incorporation of an agreement between the parties into a divorce decree), it retains jurisdiction of this case to modify orders related to that agreement under Code § 20-107.3(K)(4). We decline to review the trial court's decision not to enter an order while it still retains jurisdiction over the issue.

Wife's Transfer of Marital Funds Post Separation

Husband claims that wife has sequestered marital funds in a Swiss bank account to prevent the trial court from distributing those funds between the parties. The parties agree that in late November 1997 wife transferred over $200,000 from her National Westminster Bank account into a Swiss bank account. Wife testified that she used portions of this money, which the trial court found was her separate property stemming from a previous divorce, for living expenses and then transferred the remainder of the National Westminster Bank funds into her

- 9 -

Bank of Tidewater account, which had a balance in January 1998 of $163,290.75. While documents establish the transfer from the National Westminster Bank to Switzerland, only wife's testimony supports the transfer to Bank of Tidewater.

Husband, however, cites no evidence in his brief, nor can we find any in the record, that contradicts wife's explanation of the use of funds. The Supreme Court has said, "a trier of fact . . . may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record, even though such witnesses are interested in the outcome of the case." Jarvis v. Tonkin, 238 Va. 115, 121, 380 S.E.2d 900, 904 (1989) (citations omitted). Here, wife's evidence is uncontradicted and is consistent with the evidence in the record. Therefore, neither we nor the trial court may "arbitrarily disregard" her testimony, which husband asks us to do here. Given husband's lack of evidence in support of his contention, we cannot say that the trial court abused its discretion in believing the only evidence available and finding that the transfer was acceptable.

### Wife's Alleged Marital Waste

Husband asserts that the trial court erred by denying him the opportunity to present evidence of wife's marital waste. He claims that wife committed marital waste when she transferred money from marital accounts into her separate accounts before the separation. In so doing, he argues, she thereby prevented him from receiving the 50% of that money to which he was entitled under the Agreement.

Generally, "[t]he admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion. Evidence is admissible if it tends to prove a matter that is properly at issue in the case and if its probative value outweighs policy considerations." Blain v. Commonwealth, 7 Va. App. 10, 16-17, 371 S.E.2d 838, 842 (1988) (citing Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823

- 10 -

(1986); Levine v. City of Lynchburg 156 Va. 1007, 1014, 159 S.E.2d 95, 97-98 (1981)). A court must provide "a reasonable opportunity to develop and present evidence of value." Mosely v. Mosely, 19 Va. App. 192, 195, 450 S.E.2d 161, 163 (1994).

In this instance, the trial court declared that it would not hear evidence of any transfers by wife from marital accounts to separate accounts before the separation occurred. To the extent that any such transfers decreased the marital estate, they deprived husband of his 50% share of marital assets guaranteed by the Agreement. Evidence in the record provides at least some support to husband's contention that wife illegally transferred money out of some pension plan accounts for her own use in the form of letters from the plan managers. While wife was certainly free to spend marital assets during the marriage, under the Agreement any property purchased with those marital funds would be marital property for division and any funds deposited in her separate accounts remain marital and should be accounted for in the final distribution.

Since husband provided evidence of some wrongdoing by the wife that deprived him of property to which he is entitled, the trial court abused its discretion when it refused to allow husband to present any such evidence. Therefore, we reverse the trial court's ruling that evidence of the pre-separation transfers was inadmissible and remand this issue to allow husband to present his evidence of wrongdoing.

Husband also claims the trial court erred in failing to allow him to present evidence regarding furnishings and artwork from The Beeches and St. Edmunds. However, husband's brief spends only two paragraphs arguing the issue and fails to even articulate the issue concerning the furnishings and artwork. Rule 5A:20(e) requires appellant's brief to contain "principles of law, the argument, and the authorities relating to each question presented." While the law and authorities have been rightfully scarce throughout both briefs because of the Agreement's central importance to the proceedings, husband here fails to enable this Court to

understand even what the question is regarding the furnishings and artwork on which he could not present evidence. An argument so vague and abrupt that it fails to convey its underlying purpose certainly fails to meet the requirement of Rule 5A:20. See Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992) ("Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration.").

### Inadvertent Transfer of Funds into the Pension Plan Account

The parties agree that $28,605.39 was supposed to be transferred into VBSA Account #9089-8173 but went into the Charles Schwab Pension Plan Account, which is marital property, instead. Uncontradicted evidence establishes that these funds derived from VBSA, making them husband's separate property. The only disagreement is whether this transfer resulted in a conversion of the funds into marital property or whether the money remained husband's separately. The marital agreement in this case determines what constitutes marital and separate property. Under Smith, 3 Va. App. at 513, 351 S.E.2d at 593, we review a trial court's interpretation of a marital agreement *de novo*.

The relevant portion of the marital agreement reads as follows:

> Husband's interest in Virginia Beach Surgical Associates . . . shall be Husband's sole and exclusive separate property.
>
> *    *    *    *    *    *    *
>
> All property which is acquired during the marriage and prior to any separation of the parties above shall also be deemed marital property and shall be jointly owned.
>
> A. All marital property titled in the names of one or both parties shall be deemed equally owned irrespective of the monetary or nonmonetary contributions made toward the acquisition, care or maintenance of such property by either spouse.

The money here without question was originally from VBSA, and, therefore, husband's separate property. Under the Agreement, property is marital if acquired during the marriage, but

- 12 -

the property in question here was not acquired during the marriage. It was previously separate property and merely came to be in the pension plan account accidentally.

"The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984) (quoting Meade v. Wallen, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984)).

The Agreement countenances only two ways for property to be considered marital property. First, all of husband's assets listed on Schedule A of the Agreement not related to VBSA became marital property upon execution. Second, property acquired during the marriage prior to separation is marital property regardless of the source of funds (still excluding, however, VBSA). The Agreement provides no other avenue for marital property to exist.

Furthermore, clause A, as quoted above, does not say that property titled in the name of either party becomes marital but only that "marital property" titled in the name of either party is equally owned regardless of contribution. Since the money in question was not acquired during the marriage so as to become marital property, the titling portion of the agreement does not apply. Given the specificity of the Agreement regarding the origins of marital property and the protection of VBSA as husband's separate property, we cannot read the contract to state that separate property accidentally transferred into a marital account to transmute into marital property. Therefore, the funds accidentally transferred from the VBSA account to the pension account remain husband's separate funds.

## Conclusion

For these reasons, we find that the trial court erred in 1) ruling that husband's interest in St. Edmunds was marital property; 2) finding that wife paid the £100,000 UK for the High

Mount mortgage; 3) confusing the £100,000 UK paid toward the High Mount mortgage with the $100,000 spousal support payment; 4) failing to allow husband to introduce evidence pertaining to wife's transfers of funds from marital accounts into separate accounts pre-separation; and 5) finding the separate funds accidentally transferred into a marital account to be marital.

We affirm the trial court's 1) refusal to address the St. Edmunds rents; 2) refusal to further reimburse husband for The Beeches' expenses; 3) refusal to find that wife was the beneficial purchaser of The Beeches; 4) decision to include the money held by Dean and Dean toward husband's share of the estate; and 5) ruling that wife did not improperly transfer marital funds post-separation.

We decline to consider husband's contentions concerning furnishings and artwork in The Beeches and St. Edmunds or the trial court's failure to enter a QDRO. The former is defaulted for lack of argument or evidence, and the latter is not properly before us.

Therefore, the decision of the trial court is affirmed in part, reversed in part, and remanded.

<u>Affirmed, in part,<br>reversed, in part,<br>and remanded.</u>
