# COURT OF APPEALS OF VIRGINIA

Present: Judges Friedman, Chaney and Raphael
Argued by videoconference

TANIA SAMRA

v.      Record No. 1985-23-4

MICHAEL SAMRA

MEMORANDUM OPINION[*] BY
JUDGE STUART A. RAPHAEL
MAY 13, 2025

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

> Scott A. Surovell (Surovell Isaacs & Levy PLC, on briefs), for
> appellant.
>
> Melanie Hubbard (Malinowski Hubbard, PLLC, on brief), for
> appellee.

Appealing the trial court's final decree of divorce, Tania Samra (wife) claims that the

trial court erred by classifying the brokerage account of Michael Samra (husband) as husband's

separate property. She argues that, under *David v. David*, 287 Va. 231 (2014) (*David I*) and

Code § 20-107.3(A)(3)(a), she met her burden to show that the account had increased in value

during the marriage, so the burden should have shifted to husband to prove that the increase was

not the result of his significant efforts. But our decision on remand in *David v. David*,

64 Va. App. 216 (2015) (*David II* ), resolved that issue against wife. We said that *David I*

imposed on the nonowning spouse "the burden of proving (1) that the brokerage account

substantially appreciated during the marriage, and (2) that [the owning spouse] expended

significant personal efforts in managing this account." *David II*, 64 Va. App. at 221. Thus, the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

trial court here did not err in requiring wife to meet that burden or in finding that she fell short in doing so.

As a fallback, wife argues that the trial court erred by refusing to reconsider its ruling when she presented additional evidence after trial. Wife claims that three deposits reflected in the brokerage-account statements showed that husband lied when he testified that he had not contributed assets to the account during the marriage. But since wife had that evidence in her possession at trial and could have offered it, we cannot say that the trial court abused its discretion by denying her motion to reconsider.

BACKGROUND

Since husband prevailed in the bench trial below, we must view the evidence in the light most favorable to him, granting him "the benefit of any reasonable inferences." *Starr v. Starr*, 70 Va. App. 486, 488 (2019) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)). Husband and wife married in December 1987 and separated in October 2021. They had three children during the marriage, all of whom were adults when the parties separated. Finding that the parties had "lived separate and apart without resumption of cohabitation or a marital relationship" for the requisite time, the trial court ruled on June 30, 2023 that it was granting a divorce.

The court then considered an equitable-distribution award. Husband was the "primary earner" during the marriage. After moving several times for husband's career, including to Saudi Arabia and Egypt, the couple settled with their children in Great Falls, Virginia, in 2002. Although wife primarily "manag[ed] the household and rais[ed] the children," she worked part-time as a bank teller from 2008 to 2011. Wife deposited her earnings into a separate bank account. Husband deposited most of his earnings into a joint account at Fidelity. Wife used

another joint account at Wachovia (now Wells Fargo) to handle "routine expenses" for the family, but husband assumed primary responsibility for the couple's finances.

The disputed asset here is a Fidelity brokerage account in husband's name. By the time of the parties' separation, the account was valued at $2.1 million. Husband testified that he opened the brokerage account with approximately $200,000 before the marriage, but neither party could document precisely when husband opened the account. Husband testified that, throughout the parties' 34-year marriage, he never contributed funds to the brokerage account.[1] He said he put his earnings into a joint account, not that one. In response to the court's question whether he "[j]ust worked the investments, and now it's worth [$]2.1 million," husband responded, "Yeah[,] I left it there . . . . I didn't really pay much attention on these—the management of these accounts." Husband said that he tried to obtain earlier account records but Fidelity kept records only seven years back.

Wife testified, by contrast, that given the length of the marriage, "all [husband's] earnings and stuff . . . revolv[ed] from his earning and depositing in [the brokerage] account." Wife introduced an "Investment Report" for the brokerage account for March 2023 that showed, among other things, the account's change in value, activity, and income summary. The report, however, did not show any deposits. Husband denied using marital funds to pay taxes on the brokerage account, introducing his own "Investment Report" for May 2021 to show that payments to the IRS and Virginia Department of Taxation were made directly from the brokerage account.

Wife argued that even if the brokerage account were formed before the parties' marriage—making it presumptively separate property—it could be "transmuted to marital

---

[1] The increase in value over a 34-year period corresponds to a compounded interest rate of approximately 7%.

property by the exertion of marital effort." Wife asserted that "clearly at some point in time" husband "bought and sold things" within the brokerage account which, at a minimum, generated capital gains taxes. Wife argued that the court was "left to speculate" about who paid taxes on the brokerage account, "how it got there or how it got so big," or whether husband's marital income helped sustain "the independence" of the account. According to wife, husband produced only a fraction of the records to which he had access.

Husband responded that his testimony regarding the creation and funding of the brokerage account was "the only evidence before" the court. As for his production of financial records, husband argued that wife "only asked for documents dating back to 2020" during discovery, but she had subpoenaed "the nine years of statements" still available at Fidelity. Husband also argued that buying and selling securities during the marriage would not "transmute" the brokerage account to marital property.

In a June 2023 opinion letter, the trial court agreed with husband, finding that the account was "entirely [husband's] separate property" because wife had "not traced the contribution of marital property into the account." The court noted that wife "did not provide any testimony or evidence regarding the creation" of the account, leaving husband's "testimony that the account was created before the marriage . . . unrebutted."

Two weeks later, wife moved the court to reconsider its classification of the brokerage account or, in the alternative, to "reopen discovery . . . to allow [wife] to subpoena the remaining available account statements and records from Fidelity." Wife's motion to reconsider argued that the court "placed the burden of proof on the wrong party." Wife also alleged that husband made "three deposits" into the brokerage account "within a year of the parties' separation"— something wife said she did not realize until she reviewed "thirty months of statements after trial." The motion attached the account statements.

In an order and accompanying opinion letter dated September 8, 2023, the trial court denied wife's motion to reconsider. The opinion noted that wife's position on whether husband made "personal efforts" to grow the value of the brokerage account rested "on a colloquy . . . between the Court and [husband] during his trial testimony," where the court asked if husband "just worked the investments, and now it's worth 2.1 million?" To which husband replied,

> Yeah. I left if there. At that time, Your Honor, I owned Magellan Fund if you remember that trend fund, you know, a bunch of overseas funds with Fidelity. And I left them there and—because immediately I ended up going overseas. So I didn't really pay much attention on these—the management of these accounts.

The trial court said that "[w]hen understood in its totality, [husband's] answer is that he did not apply significant personal efforts during the marriage to [the brokerage] account." The court "did not have evidence to show what efforts [husband] made with regard to the account over the course of the marriage" and found that any personal efforts that may have been made "were not significant."

The final decree of divorce awarded wife $1,101,986, one-half interest in three individual retirement accounts in husband's name (collectively valued at $1,704,507.67), and spousal support. Wife noted a timely appeal.

ANALYSIS

A. *The trial court correctly required wife to prove that husband's significant efforts increased the value of the brokerage account (Assignments of Error 1, 2).*

Wife argues that the trial court misapplied the burden of proof under Code § 20-107.3(A)(3)(a) in determining that the brokerage account remained husband's separate property despite its ten-fold increase in value during the marriage. The proper interpretation of this code provision presents a question of law that we review de novo. *Dixon v. Dixon*, 71 Va. App. 709, 718 (2020).

- 5 -

Code § 20-107.3(A)(3)(a) governs how trial courts determine whether the increase in value of a spouse's separate property during the marriage should be deemed marital property. That subsection provides:

> In the case of the increase in value of separate property during the marriage, such increase in value shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property.
>
> For purposes of this subdivision, the nonowning spouse shall bear the burden of proving that (i) contributions of marital property or personal effort were made and (ii) the separate property increased in value. Once this burden of proof is met, the owning spouse shall bear the burden of proving that the increase in value or some portion thereof was not caused by contributions of marital property or personal effort.

Code § 20-107.3(A)(3)(a).

The first paragraph of subsection (A)(3)(a) states the governing legal principle: the increase in the property's value is deemed marital if "the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property." The second paragraph describes the shifting burdens of proof: the nonowning spouse initially bears "the burden of proving that (i) contributions of marital property or personal effort were made and (ii) the separate property increased in value." The burden then shifts to the owning spouse to prove that the increase in value or some portion thereof was not caused by contributions of marital property or personal effort."

The second paragraph of subsection (A)(3)(a) does not expressly address the requirement in the first paragraph that the spouse's personal efforts "must be significant and result in substantial appreciation of the separate property." Husband argues that the nonowning spouse must prove in the first instance that the owning spouse's personal efforts were significant and

- 6 -

resulted in substantial appreciation of the separate property. Wife counters that the nonowning spouse discharges her production burden simply by showing "that (i) contributions of marital property or personal effort were made and (ii) the separate property increased in value." She says the burden then shifts to husband as the owning spouse to show that his efforts were not significant or did not result in substantial appreciation of the separate property.

Wife finds support for her reading in *David I*, where the Supreme Court said that Code § 20-107.3(A)(3)(a) "does not require the [nonowning] spouse to prove causation"; rather, it "explicitly places the burden of disproving causation on the owning spouse." 287 Va. at 239. So "once the [nonowning] spouse makes a prima facie showing of a spouse's personal efforts during the marriage . . . and an increase in value of the separate property," the burden shifts to the owning spouse to "disprov[e] causation." *Id.* at 241. By analogy, wife argues, the nonowning spouse likewise need not show that the owning spouse's efforts were significant; the burden of disproving a significant contribution rests on the husband.

Although wife presents a plausible reading of the statute, we are foreclosed from accepting it under our decision in *David II*, decided on remand from the Supreme Court in *David I*. In an opinion for this Court by then-Judge McCullough, we interpreted "the Supreme Court's guidance" in *David I* to impose on the wife (the nonowning spouse there) "the burden of proving (1) that the brokerage account substantially appreciated during the marriage, and (2) that husband expended *significant* personal efforts in managing this account." *David II*, 64 Va. App. at 221 (emphasis added). We repeated that standard a couple of times. *See id.* at 222 ("Wife also was required to establish that husband expended significant personal efforts with regard to the brokerage account."); *id.* at 224 ("Once wife established that the brokerage account significantly increased in value and that husband made significant personal efforts with regard to the account, it was incumbent on husband to shoulder the burden of proving that the increase in

- 7 -

value occurred for reasons other than his personal efforts.").  That language was not mere dicta.  To the contrary, viewing the evidence in favor of the wife, who had prevailed in the trial court, we said the trial court was not "plainly wrong" to find that the wife had carried her burden under that standard, thereby shifting the burden to the husband.  *Id.* at 223.

Two considerations require that we adhere to how we allocated the burden of proof in *David II*.  First, *David II* binds us under the interpanel-accord doctrine and cannot be overruled "except by the Court of Appeals sitting en banc or by the Virginia Supreme Court."  *Johnson v. Commonwealth*, 75 Va. App. 475, 481 (2022).  Second, a decade has passed since *David II* without any action by the General Assembly to change our interpretation of the burden-shifting rules in Code § 20-107.3(A)(3)(a).  The General Assembly has amended other subsections of the statute four times since our decision in *David II* without making any changes to subsection (A)(3)(a).[2]  As "[t]he General Assembly is presumed to be aware of our construction of relevant statutes and . . . has taken no action to amend [the relevant provisions], . . . [t]he legislature's 'acquiescence is deemed to be approval.'"  *Tatusko v. Commonwealth*, 79 Va. App. 721, 730 (2024) (quoting *Barson v. Commonwealth*, 284 Va. 67, 74 (2012)).

We now turn to how the trial court viewed the evidence under that standard.  The "trial court's classification of property is a finding of fact[] that . . . will not be reversed on appeal unless it is plainly wrong or without evidence to support it."  *David II*, 64 Va. App. at 221 (quoting *Ranney v. Ranney*, 45 Va. App. 17, 31-32 (2005)).  A trial court's findings on whether an account substantially increased in value or whether the spouse expended significant personal efforts to manage the account are likewise subject to the same deferential standard of review.  *Id.* at 222.

---

[2] *See* 2016 Va. Acts ch. 559; 2017 Va. Acts ch. 797; 2019 Va. Acts ch. 304; 2022 Va. Acts ch. 438.

No one here questions that the value of husband's brokerage account "substantially appreciated during the marriage." *Id.* at 221. The value grew from about $200,000 before the marriage to more than $2.1 million at separation.

But applying *David II* and taking the evidence in the light most favorable to husband, the trial court was not plainly wrong to find that wife, as the nonowning spouse, failed to carry her burden to prove "that husband expended significant personal efforts in managing this account." *Id.* For brokerage accounts, "routine adjustments to the portfolio—adding to stocks that are performing well and culling underperforming stocks—[do] not constitute significant personal effort." *Id.* at 223. Husband testified that, after funding the account before the marriage, he just "left it there" and never withdrew money from it. That testimony supported the trial court's finding "that whatever personal efforts were made [by husband], they were not significant."

We cannot say that the trial court was plainly wrong in crediting husband's testimony and not wife's. For "determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact." *Brown v. Commonwealth*, 75 Va. App. 388, 413 (2022) (quoting *Parham v. Commonwealth*, 64 Va. App. 560, 565 (2015)). The trial court credited the husband's "testimony that the account was created before marriage." Wife acknowledged in her motion to reconsider and on brief here that she "did not introduce any statements in evidence" to show that husband made contributions to the brokerage account during the marriage. Although wife testified that "all [husband's] earnings and stuff . . . revolv[ed] from his earning and depositing in [the brokerage] account," the records she introduced into evidence failed to show such contributions.

As to husband's personal efforts to manage the account, the trial court also credited husband's testimony that he left the investments in the brokerage account and "didn't really pay much attention [to] . . . the management of these accounts." In *David II*, we said that the trial

court properly found that the wife met her burden of proof when she testified that her husband "spent hours" working on the account and was "deeply absorbed" in it. 64 Va. App. at 223. Here, wife offered no such testimony. Although wife argues that she impeached husband's trial testimony with his deposition testimony that he sometimes contributed excess funds during the marriage to the brokerage account, husband explained that inconsistency; he said that he was confused in his deposition between the two Fidelity accounts at issue and that the money was not contributed to the brokerage account. The trial court was not plainly wrong to credit husband's testimony.

In short, the court had no evidence before it to show what efforts were made to the brokerage account "over the course of the marriage." Faced with that gap, the court accepted husband's testimony, stating that, "[b]ased on this testimony the Court finds that the evidence fails to show that [husband] expended substantial personal efforts managing the Fidelity Brokerage Account." Despite wife's criticism of that finding, the record does not compel a different one. Viewing the evidence in the light most favorable to husband, the record supports the trial court's finding that the entire brokerage account remained husband's separate property.

### B. The trial court did not abuse its discretion in denying wife's motion to reconsider or to reopen the evidence (Assignment of Error 3).

Wife also claims that the trial court erred by denying her request to "reopen discovery or present evidence" after husband "misled . . . her and the [c]ourt in discovery and at trial." Wife sought to introduce additional financial statements that showed that husband made "three deposits into the [brokerage] account within a year of the parties' separation." Alternatively, she asked the trial court to reopen discovery to allow her to "subpoena the remaining available statements from the [brokerage account] to further show [husband's] fraud on the Court."

We agree with husband that wife failed to assign error to the trial court's refusal to reopen discovery. Wife's third assignment of error is limited to the trial court's alleged "fail[ure]

- 10 -

to consider additional evidence provided by Appellant after trial." Because "[o]nly assignments of error listed in the brief will be noticed by this Court," Rule 5A:20(c)(1), "the scope of argument on appeal is limited by the assignments of error," *Mettetal v. Va. Bd. of Med.*, 83 Va. App. 182, 203 (2024) (quoting *Dudley v. Est. Life Ins. Co.*, 220 Va. 343, 348 (1979)). We therefore cannot consider that argument.

As for the assigned error—whether the trial court erred in not considering "additional evidence . . . after trial"—the trial court did not abuse its discretion in denying wife's motion to reconsider.[3] Although the trial court did not provide its rationale for declining wife's request, "it is an appellate court's function to presume that the trial court made the requisite findings of fact to support its decision." *Commonwealth v. Holland*, ___ Va. ___, ___ (Jan. 16, 2025).

"[M]otions to reopen an evidentiary record or to reconsider a prior ruling involve matters wholly in the discretion of the trial court." *Thomas v. Commonwealth*, 62 Va. App. 104, 109 (2013). Whether to grant such relief depends on the movant's "ability to point out some error on the face of the record, or to show some legal excuse for his failure to present his full defense." *Id.* (quoting *Downing v. Huston, Darbee Co.*, 149 Va. 1, 9 (1927)). Absent a "valid excuse," a party who has had his day in court cannot reopen the hearing simply to raise matters he neglected to raise at the time. *Id.*

> This "valid excuse" standard typically requires a showing that the party has exercised due diligence in making the best of prior opportunities to address the issue, has obtained newly discovered evidence that could not have been previously discovered during a reasonably thorough investigation, or has recently learned of an unforeseeable judicial ruling affecting the issue previously decided by the court.

---

[3] Husband also argues that wife defaulted the remainder of this assignment of error under Rule 5A:20(e) by failing to cite any principles of law or authority in her opening brief. As wife cited authority on brief that the standard of review here is for an abuse of discretion, we decline to find this assignment of error defaulted.

*Id.* "After a court has concluded an evidentiary hearing 'during which each party had ample opportunity to present evidence, it [is] within the court's discretion to refuse to take further evidence on [the] subject.'" *Holmes v. Holmes*, 7 Va. App. 472, 480 (1988) (first alteration in original) (quoting *Morris v. Morris*, 3 Va. App. 303, 307 (1986)).

We recently applied that standard in *Khine v. Commonwealth*, 82 Va. App. 530 (2024). On remand from this Court, Khine moved the trial court to reopen the evidence so he could present a medical report "to support his insanity defense." *Id.* at 549. We affirmed the trial court's decision denying the motion because the report "was known to the parties well before trial" and the doctor who prepared it had not been called to testify. *Id.* at 553. Because Khine lacked a "valid reason or excuse . . . for why the evidentiary record needed to be reopened," the trial court did not abuse its discretion in denying his request. *Id.*

Wife argues that the three deposits to the brokerage account that she found among the account statements after trial contradicts husband's trial testimony that he did not add funds to the account during the marriage. But it is undisputed that she had those records in her possession at the time of trial. She says she found that evidence when reviewing "thirty months of statements after trial."

Like the trial court in *Khine*, the trial court here could properly find that wife failed to provide a valid excuse for not introducing the account statements at trial, whether as evidence in her own case-in-chief or when cross-examining husband. To be sure, another trial judge could have properly found that the discrepancy raised by the later-filed account statements warranted reconsideration. But "an abuse of discretion cannot be shown merely because '[r]easonable trial judges and even some members of this Court, had they been sitting as trial judges in this case,' might have reached a different conclusion than the one under review." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Coe v. Commonwealth*, 231 Va. 83, 88

- 12 -

(1986)).  "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred.'"  *Id.* (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).  Under the "highly deferential abuse-of-discretion standard," *Khine*, 82 Va. App. at 552 (quoting *Thomas*, 62 Va. App. at 111), we cannot say that the trial court abused its discretion by denying wife's motion to reconsider.

### C.  Neither side will recover appellate attorney fees.

Wife and husband each request their appellate attorney fees.  In a divorce case, whether to award attorney fees incurred on appeal "is discretionary."  *Koons v. Crane*, 72 Va. App. 720, 742 (2021) (quoting *Friedman v. Smith*, 68 Va. App. 529, 545 (2018)).  In exercising that discretion, we are "not limited to a consideration of whether a party's position on an issue was frivolous or lacked substantial merit but may consider all the equities of the case."  Rule 5A:30(b)(2)(C).  Having considered the equities of this case, we deny each side's request for appellate attorney fees.

### CONCLUSION

The trial court did not err in classifying husband's brokerage account as husband's separate property.  Although the value of the account increased considerably during the marriage, the trial court was not plainly wrong under *David II* to find that wife failed to carry her burden to prove that husband expended significant personal efforts to manage the account.  The trial court likewise did not abuse its discretion in declining to reconsider its rulings based on evidence offered by wife after trial that could have been offered at trial.  Each party's claim for appellate attorney fees is denied, and the judgment is affirmed.

*Affirmed.*