# CASES DECIDED

## IN THE

# Supreme Court of Appeals

## OF VIRGINIA

### Wytheville.

### JAMES W. DOWNING v. HUSTON, DARBEE COMPANY, ET ALS.

June 16, 1927.

Absent, Prentis, P.

Rehearing denied, with modification, January 30, 1928.

1. REHEARING—*Bill of Review and Petition for Rehearing Distinguished—Petition Held to be in Effect a Petition for a Rehearing—Case at Bar.*—In the instant case, a creditors' suit, on April 26, 1923, a decree was entered confirming the report of the commissioner and directing a sale of defendant's property. On May 7, 1925, defendant by leave of court filed his petition alleging that judgments in favor of one of the complainants were confessed upon judgment confession notes which were procured from defendant by fraud and alleging indebtedness due him by the other complainant more than sufficient to offset the amount due upon the judgment of this complainant, and asking for an injunction restraining any sale under the decree of April 26, 1923.

   *Held:* That defendant's petition was in effect a petition for a rehearing and would be so treated as it could not be regarded as a bill of review which lies only to a final decree.

2. REHEARING—*Bill of Review—Discretion of Chancellor.*—A court has much less authority in dealing with a bill of review to a final decree than with a petition to rehear an interlocutory decree. The granting of a rehearing in such cases rests in the sound judicial discretion of the chancellor.

3. FINAL JUDGMENTS AND DECREES—*Interlocutory Decrees—Decree for Sale Under a Mortgage.*—A decree in a creditors' suit confirming the report of a commissioner and directing a sale of defendant's property

is not a final but an interlocutory decree. It does not give that complete relief which makes the further action of the court in the case unnecessary.

4. FINAL JUDGMENTS AND DECREES—*Decree for a Sale.*—A decree for a sale under a mortgage, or otherwise, is interlocutory because the sale is not consummated until approved by the court.

5. FINAL JUDGMENTS AND DECREES—*Further Action of Court Necessary.*— Where the further action of the court in the case is necessary to give completely the relief contemplated by the court, then the decree upon which the question arises is to be regarded not as final, but interlocutory.

6. FINAL JUDGMENTS AND DECREES—*Interlocutory Decrees in the Breast of the Court—Correction of Interlocutory Decree—Petition for Rehearing.*—Until a final decree is entered and the court adjourned, all the proceedings from the first decree onward, though had or entered at former terms of the court, are interlocutory and in the breast of the court. Where, therefore, before final decree any material error is discovered in any decree, the court on having its attention directed to the error, or the newly discovered evidence, is free to hear the parties, and to make such correction as justice demands. This is done by means of a petition to rehear. Interlocutory decrees are subject to alteration and amendment, in the sound discretion of the court, at any future term, and until the entry of the final decree.

7. BILL OF REVIEW—*Petition for Rehearing Distinguished.*—Where considerations of justice require it, there is not the same judicial reluctance to grant relief under a petition to rehear, as in the case of a bill of review.

8. REHEARING—*Discretion of Court—When Petition for Rehearing Sustained—Excuse for Delay.*—Where a case has not been heard upon the merits, but an interlocutory decree has been rendered upon the bill taken for confessed, and other circumstances, tending to excuse the defendant's default in making his defense at the proper time, appear, the rehearing of the decree upon a petition filed for that purpose showing that the defendant had a meritorious defense, may, ·in the discretion of the court, be sustained.

9. REHEARING—*Pointing out Error or Showing a Legal Excuse for Failure to Present Defense.*—The petitioner's right to relief on a rehearing depends upon his ability to point out some error on the face of the record, or to show some legal excuse for his failure to present his full defense at or before the time of entry of the decree which he seeks to have modified.

10. REHEARING—*Excuse for Defendant's Failure to Answer—Lack of Due Diligence by Defendant—Case at Bar.*—In the instant case, a creditors' suit, the court entered a decree confirming the report of the commissioner and directing a sale of defendant's property. Defendant

had filed no exceptions to the report of the commissioner. In his petition for rehearing he did not allege any error on the face of the record nor make any allusion to after-discovered evidence; nor explain his failure to file his answer within the time prescribed by law, setting up his defense to the matters alleged in the bill; nor his failure to file exceptions to the commissioner's report. Evidence introduced in support of defendant's petition for a rehearing was not after-discovered evidence but evidence which defendant by the exercise of due diligence could have presented when the commissioner was taking the account of the liens under the decree of reference.

*Held:* That defendant had had his day in court and the lower court did not err in dismissing defendant's petition and ordering special commissioners to execute the decree of sale.

11. WITNESSES—*Corroboration*—*Transactions With Deceased Persons*—*Burden of Proof as to Application of a Payment by a Decedent*—*Case at Bar.*—In the instant case, a creditors' suit, it was admitted by complainants that the debtor had paid their decedent $4,000 on a certain date and that the debtor's testimony was sufficiently corroborated as to the payment but it was contended by complainants that the debtor should produce corroborative evidence not only of the payment but also to show that there was no other indebtedness to which the payment might have been applied by the decedent.

*Held:* That it being proven and admitted by the complainants that the $4,000 was paid to the decedent before his death, the burden was on his executors to show that he had given the debtors proper credit for the same and this, in the instant case, they failed to do.

Appeal from a decree of the Circuit Court of Accomac county. Decree for complainants. Defendant appeals.

*Reversed in part; affirmed in part.*

The opinion states the case.

*J. Brooks Mapp,* for the appellant.

*Elmer W. Somers, Jas. E. Heath, Benjamin T. Gunter* and *Stewart K. Powell,* for the appellees.

WEST, J., delivered the opinion of the court.

James W. Downing owned real estate in Accomac

county, valued at over $90,000, upon which there were lien debts aggregating about $100,000.

Huston, Darbee Company and Elmer W. Somers instituted this suit against him to subject his property to the payment of these debts. All his lien creditors of record were made parties defendant. Among the creditors holding debts secured by deeds of trust was the estate of L. Floyd Nock, deceased; and Huston, Darbee Company was the holder of two judgments, each for $2,087, with interest, costs and collection charges.

In December, 1922, a decree was entered referring the cause to a commissioner in chancery to report an account of the real estate owned by James W. Downing, its annual and fee simple value, and the liens thereon with their dignities and priorities. Commissioner Melson took evidence as to the fee simple and annual value and reported the same together with a list of the liens recorded against said real estate. No exception was filed to his report, and on April 26, 1923, a decree was entered confirming the same and directing Elmer W. Somers and S. James Turlington, special commissioners, to make sale of the property and report to court.

Nothing further appears to have been done in the case until May, 1925. On May 7, 1925, James W. Downing, by leave of the court, filed his petition in the cause, alleging that since the entry of the decree of sale on April 26, 1923, he had paid to Huston, Darbee Company $2,000 and paid in full the amount due Elmer W. Somers, the other complainant; that the judgments in favor of Huston, Darbee Company were confessed upon judgment confession notes which were procured from petitioner by fraud; and setting up certain other indebtedness due him by Huston, Darbee Company

which was more than sufficient to offset the amount due upon the two judgments, if the court held them valid; and asking for an injunction restraining any sale by the commissioners under the decree of April 26, 1923.

It was agreed by counsel for Downing and Nock's estate that in passing upon Downing's claim against Huston, Darbee Company, the court should also pass upon a four thousand dollar credit which Downing claimed against the lien debts due by him to the estate of L. Floyd Nock, as shown by the report of Commissioner Melson.

The decree of May 7, 1925, permitting the filing of the Downing petition, also permitted the filing of the answers thereto, and ordered that the papers be referred again to a commissioner in chancery to ascertain and report any liens not heretofore reported in the former report filed herein; and payments made upon any of the liens set forth in said report, and any other matters that might be requested by the parties, and enjoining the special commissioners from proceeding to sell the property under the decree of April 26, 1923, until the further order of the court.

The commissioner, after taking much evidence upon. the questions referred to him, filed his report on June 5, 1925, in which he refused to allow Downing's claim against Huston, Darbee Company, because of his delay in presenting it and because he did not except to the report of the commissioner made pursuant to the first reference.

The commissioner also reported that Downing was entitled to the credit of $4,000, with interest from December 28, 1918, on his indebtedness to the Nock estate.

Nock's executors excepted to so much of the report

as held that Downing was entitled to this credit; and Downing excepted to so much of the report as held that he was not entitled to the credit claimed on the judgments in favor of Huston, Darbee Company. By a decree of September 25, 1925, upon a hearing on the exceptions to the report, the court overruled the exceptions of James W. Downing, rejected the testimony taken in support of the petition, dismissed the petition and ordered special commissioners Turlington and Somers to proceed to execute the decree of sale; sustained the exception of the executors of the L. Floyd Nock estate, and decreed that the credit of $4,000 in favor of James W. Downing be disallowed. Upon the petition of James W. Downing an appeal was allowed from this decree.

Petitioner relies upon two assignments of error:

"1st. The holding of the circuit court that your petitioner could not claim any offset or payment made to Huston, Darbee Company, one of the complainants, at any time up until final decree.

"2nd. The holding of the circuit court that the evidence of your petitioner as to the four thousand dollar ($4,000.00) payment to L. Floyd Nock was uncorroborated."

[1–3] The Downing petition is in effect a petition for a rehearing and will be so treated. It cannot be regarded as a bill of review, which lies only to a final decree. The court has much less authority in dealing with a bill of review to a final decree than with a petition to rehear an interlocutory decree. The granting of a rehearing in such cases rests in the sound judicial discretion of the chancellor. The decree of April 26, 1923, which petitioner desired reheard is not a final but an interlocutory decree. It does not give that complete relief which makes the further action of the court in the case unnecessary.

[4] In *Repass* v. *Moore*, 96 Va. 150, 30 S. E. 459, Judge Keith speaks as follows: " 'A decree for a sale under a mortgage, or otherwise, is interlocutory because the sale is not consummated until approved by the court.' 2 Barton's Ch. Pr., section 233.

[5] " 'Where the further action of the court in the case is necessary to give completely the relief contemplated by the court, then the decree upon which the question arises is to be regarded not as final, but interlocutory.' *Cock* v. *Gilpin*, 1 Rob. [45 Va.) 28; *Rawlings* v. *Rawlings*, 75 Va. 76.

"The decree under consideration does not decide the whole matter in contest, and leave nothing for the court to do. In order that lienors before the court might enjoy the fruits of litigation, it was necessary that there should have been a decree for a sale of the debtor's land; that sale reported and confirmed, and a distribution of its proceeds by subsequent decrees among those entitled. The decree before us had not fully ascertained the liens, and the cause was remanded to a commissioner for further enquiry and report. If the report of the liens had been complete, and had been confirmed, and a decree for sale had been entered, it would not have been a final decree, for the action of the court upon the report of sale would still have been necessary."

In *Ryan's Admr.* v. *McLeod*, 32 Gratt. (73 Va.) 367, Judge Staples, after stating the facts in the case, says: "From this statement it will be seen, the court reserved complete power over the sale to confirm it or set it aside, as the interests of the parties might require. No title could be made to the purchaser, without further action of the court; and what is most material to notice, no disposition is made of the purchase money; no direction given to the commissioners on the subject;

so that the creditors could not receive a dollar of the proceeds, nor the heirs the surplus, without a further decree. If this be a final decree, the court has deprived itself of all control over the subject matter of controversy, and ended the cause without giving the parties the slightest relief.

"The very fact that no direction is given as to the proceeds of sale, and that the commissioners are required to report their proceedings to court, is conclusive that further action of the court was not only contemplated, but actually necessary.

"According to the uniform decisions of this court, a decree which disposes of the whole subject gives all the relief that is contemplated, and leaves nothing to be done by the court, is only to be regarded as final. *Vanmeter's Ex'ors* v. *Vanmeter*, 3 Gratt. [44 Va.] 142 [148]; *Harvey and Wife* v. *Branson*, 1 Leigh [28 Va.] 108. On the other hand, every decree which leaves anything in the cause to be done by the court is interlocutory as between the parties remaining in the court."

[6, 7] This court, quoting with approval from Lile's Equity Pl. & Pr., sections 148, 157, in *Richardson* v. *Gardner*, 128 Va. at page 685, 105 S. E. 228, said: "Until a final decree is entered and the court adjourned, all the proceedings from the first decree onward, though had or entered at former terms of the court, are interlocutory and in the breast of the court. Where, therefore, before final decree, any material error is discovered in any decree, the court on having its attention directed to the error, or *the newly discovered evidence*, is free to hear the parties, and to make such correction as justice demands. This is done by means of a petition to rehear.

"Being thus in the breast of the court, such decrees (*i. e.*, interlocutory decrees) do not constitute final

records, and hence they are subject to alteration and amendment, in the sound discretion of the court, at any future term, and until the entry of the final decree. Hence, where considerations of justice require it, there is not the same judicial reluctance to grant relief under a petition to rehear, as in the case of a bill of review." (Italics ours.)

[8] In *Spilman, Adams & Co.* v. *Gilpin*, 93 Va. 702–703, 25 S. E. 1004, 1007, Keith, P., says: "It is settled that a bill of review lies to rehear a decree for after-discovered evidence; and with respect to after-discovered evidence there seems to be no difference between a bill of review and a petition for a rehearing, * * . It is difficult to define the precise limits of the duty of courts upon petitions to rehear. It may be safely stated, however, as being established by the authorities, that where a case has not been heard upon the merits, but an interlocutory decree has been rendered upon the bill taken for confessed, and other circumstances tending to *excuse the defendant's default in making his defense at the proper time* appear, the rehearing of the decree upon a petition filed for that purpose showing that the defendant had a meritorious defense, may, in the discretion of the court, be sustained." (Italics ours.)

[9] The petitioner's right to relief on such rehearing depends upon his ability to point out some error on the face of the record, or to show some legal excuse for his failure to present his full defense at or before the time of entry of the decree which he seeks to have modified.

In *Woods* v. *Early*, 95 Va. 311, 28 S. E. 375, the court said: "As the petition to rehear did not allege the discovery of new and important testimony not known or accessible to petitioner before the former hearing

and pointed out no error upon the face of the former decree, it was properly dismissed.''

In *Gills* v. *Gills*, 126 Va. 526, 101 S. E. 900, Judge Sims, speaking for the court, said: ''Courts are provided for the purpose of putting an end, and a speedy end, to controversies, and not as a forum for endless litigation. Without valid excuse, no party who has had his day in court can reopen the hearing after final decision of extrinsic matters in controversy between the same parties on the mere ground that he wishes to interpose other defenses which he neglected to interpose before such decision was made. It is seldom that such defenses have any real merit, and where it chances that they have any validity, it is better that they should be lost by the negligent litigant than that the vitally important rule that there must be an end of litigation should be set at naught.''

[10] The Downing petition does not allege any error on the face of the record, nor make any allusion to after-discovered evidence; nor explain petitioner's failure to file his answer within the time prescribed by law, setting up his defense to the matters alleged in the bill; nor his failure to file exceptions to the commissioner's report. It was not error for the court to strike out all the evidence taken in support of the allegations of the petition, since it was not after-discovered evidence, but evidence which the petitioner, by the exercise of due diligence, could have presented when the commissioner was taking the account of the liens under the first decree of reference. Petitioner has had his day in court and cannot now be allowed to interpose defenses which he neglected to make before the amount of the Huston, Darbee Company lien against him was ascertained and reported. He makes no excuse for his delay.

[11] Under the second assignment of error it is contended that the court erred in holding that the evidence of the petitioner as to the payment of $4,000 to L. Floyd Nock was not corroborated as required by section 6209 of the Code.

The petition makes no reference to the $4,000 and what we have said concerning the claims set up in the petition has no reference to it.   It was by consent of parties that the court undertook to pass upon this credit of $4,000.

It is admitted by appellees that J. W. Downing paid Nock $4,000 on December 28, 1918, and that Downing's testimony is sufficiently corroborated as to such payment; but it is contended that he should produce corroborative evidence not only of the payment but also to show that there was no other indebtedness to which it might have been applied by Mr. Nock.   With this contention we cannot concur.

It being proven by the evidence and admitted by appellees that the $4,000 was paid to Nock before his death, the burden was on his executors to show that he has given Downing proper credit for the same. This they have failed to do.   Ben T. Gunter, one of the executors of L. Floyd Nock, testified that he searched to the best of his ability Mr. Nock's papers for the purpose of ascertaining whether he had made any application of the $4,000 to the payment of Downing's debts and could find nothing to identify it.

Thos. W. Blackstone, one of the executors of L. Floyd Nock, testified as follows:

"Q. * * * have you ever been able to find where the $4,000.00 in any way was ever applied by Mr. Nock to any indebtedness due him or his clients by Mr. Downing?

"A. I have not, sir.

"Q. Have you looked?

"A. To the best of my ability."

S. James Turlington, attorney for Downing, testified that Nock and Downing had discussed Downing's financial status fully in his presence, and that he understood from interviews with them that all sums due Nock by Downing were secured by deeds of trust, and that the only other unsettled business between them was an open account due Downing by Nock for merchandise furnished Nock's tenants. Witness further testified that he had seen a statement given Downing by Nock, in Nock's handwriting, accounting for every dollar of the loan of about $13,000 which Nock made to Downing about two months after Downing paid Nock the $4,000, and it in no manner referred to this $4,000. The testimony of the three witnesses last above quoted tends strongly to corroborate the testimony of appellant that Nock failed in his lifetime to give him credit for the $4,000.

For the foregoing reasons, a decree will be entered here reversing the decree as to the $4,000, and allowing James W. Downing a credit of 4,000, as of December 28, 1918, on the lien debt due by him to the estate of L. Floyd Nock, as shown by the report of Commissioner Melson. The appellant, James W. Downing, will be awarded judgment against Nock's executors for the costs which he incurred in the circuit court and in this court in his controversy with Nock's executors. Appellees will be allowed to recover of the appellants their costs by them expended in this court.

*Reversed in part; affirmed in part.*