COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Alston and Senior Judge Coleman
Argued at Richmond, Virginia


ROBIN KEMP SMITH

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 1709-11-2                        JUDGE LARRY G. ELDER
                                                          MAY 8, 2012
MARK K. SMITH


               FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            Richard D. Taylor, Jr., Judge

          Robin M. Morgan (Blackburn, Conte, Schilling & Click, P.C., on
          briefs), for appellant.

          Charles E. Powers (Terrence R. Batzli; Batzli Wood & Stiles, PC,
          on brief), for appellee.


        Robin Kemp Smith (wife) appeals from an order granting the motion of Mark K. Smith

(husband) to terminate spousal support.  On appeal, wife contends the court erred in terminating

the award after expressly finding both that she demonstrated a specific monthly financial need

not challenged by husband and that he had the ability to meet that need for support.  She also

contends the trial court erred in refusing to allow her to present evidence of new events relevant

to her financial needs when more than twelve months had elapsed since the court had received

evidence and the court had not yet issued a letter opinion, especially given that the trial court did

not reserve to her the right to request a reinstatement of support.  Husband contends wife's

appeal is frivolous and that he is entitled to an award of attorney's fees on appeal.  We hold the

court's rulings did not constitute error, and we affirm.  Further, we hold wife's appeal was not so

frivolous as to entitle husband to the requested award of fees, and we deny that request.

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

A. SUPPORT RULING AND FAILURE TO FILE TRANSCRIPT

Code § 20-109(A) permits the court to "increase, decrease, or terminate the amount or duration of any spousal support and maintenance that may thereafter accrue, whether previously or hereafter awarded, as the circumstances may make proper." A party seeking modification of spousal support bears the burden of proving "both a material change in circumstances and that this change warrants a modification of support." Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989). We must view the facts underpinning the decision whether to modify a spousal support award under this code section in the light most favorable to the party who prevailed below. E.g., Richardson v. Richardson, 30 Va. App. 341, 349, 516 S.E.2d 726, 730 (1999). "The determination whether a spouse is entitled to [an increase, decrease or cessation of spousal] support . . . is a matter within the discretion of the [trial] court . . . ." Dukelow v. Dukelow, 2 Va. App. 21, 27, 341 S.E.2d 208, 211 (1986).

"The 'circumstances' which make 'proper' an increase, reduction or cessation of spousal support under Code § 20-109 are financial and economic ones." Hollowell v. Hollowell, 6 Va. App. 417, 419, 369 S.E.2d 451, 452-53 (1988). Thus, the trial court may consider applicable factors that were previously considered in making an initial award of spousal support pursuant to Code § 20-107.1, including the earning capacity, obligations, needs, and financial resources of the parties; the property interests of the parties; the duration of the marriage; and the standard of living established during the marriage. Compare 1988 Va. Acts ch. 620 (in effect when the parties separated), with 1994 Va. Acts ch. 518 (in effect when the parties divorced), and 2003

- 2 -

Va. Acts ch. 625 (in effect when the parties filed the instant motions to modify support) (all containing the cited factors).[1]

"[T]he law's aim is to provide a sum *for such period of time as needed* to maintain the spouse in the manner to which the spouse was accustomed *during the marriage*, balanced against the other spouse's ability to pay." Blank v. Blank, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1990) (emphases added). A former spouse receiving support "'ha[s] no right to remain idle at the expense of [the obligor spouse;] . . . it is [the recipient spouse's] duty to minimize [the obligor spouse's] loss, [even if] it was through [the obligor spouse's] fault that [the recipient spouse] was compelled to ask that the contract of marriage be rescinded.'" Baytop v. Baytop, 199 Va. 388, 394, 100 S.E.2d 14, 19 (1957) (quoting Barnard v. Barnard, 132 Va. 155, 164, 111 S.E. 227, 230 (1922)). Whether to impute income to either spouse—a subsidiary component of whether to order an increase, decrease, or cessation of support—also lies within the sound discretion of the trial court and will not be overturned on appeal unless "plainly wrong or unsupported by evidence." Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999).

Further, settled principles provide on appeal that

> the judgment of the lower court is presumed to be correct and the
> burden is on the appellant to present to us a sufficient record from
> which we can determine whether the lower court has erred in the
> respect complained of. If the appellant fails to do this, the
> judgment will be affirmed.

---

[1] Wife contends on brief that "[t]he Court did not specifically indicate which, if any, of the statutory or other factors it considered in considering whether to increase, decrease, or terminate spousal support." Wife did not raise this issue in the trial court, and thus, it is not properly before us in this appeal. See Rule 5A:18; cf. West v. West, 53 Va. App. 125, 131, 669 S.E.2d 390, 393 (2008) (holding that Rule 5A:18 barred consideration of a father's claim on appeal that the trial court erred in awarding spousal support because the trial court failed to provide the specific written findings expressly required by Code § 20-107.1(F) for all "suits for initial spousal support orders filed on or after July 1, 1998, and suits for modification of spousal support orders arising from suits for initial support orders filed on or after July 1, 1998"). In any event, the record shows the trial court set out the reasons for its ruling in detail, although it did not expressly cite to any of the statutory factors by section number or letter.

Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256 (1961). Rule 5A:8 provides that "the transcript of any proceeding is part of the record when it is filed in the office of the clerk of the trial court within 60 days after entry of the final judgment." "If . . . the transcript is indispensable to the determination of the case, then the requirements for making the transcript a part of the record on appeal must be strictly adhered to." Turner v. Commonwealth, 2 Va. App. 96, 99, 341 S.E.2d 400, 402 (1986). "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission shall not be considered." Rule 5A:8(b)(4)(ii); see Smith v. Commonwealth, 281 Va. 464, 467-70, 706 S.E.2d 889, 891-93 (2001) (holding that failure to file a transcript in compliance with Rule 5A:8 is not grounds for *dismissal* of an appeal but may nevertheless prevent an appellate court from considering an issue on the merits). Here, wife's failure to file a transcript of the second half of the evidentiary hearing, standing alone, is not fatal to her appeal but may adversely impact her ability to prove error.[2]

Finally, as to the transcripts that are properly before us on appeal, "[w]e will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). "[A] trial court's remark is not, in and of itself, 'the full context' simply because it represents the only point at which the court [expressly] addressed the issue [in dispute]." Bassett v. Commonwealth, 13 Va. App. 580, 583-84, 414 S.E.2d 419, 421 (1992) (applying Yarborough).

Here, wife contends the trial court found she demonstrated a specific monthly need for support and that husband had the ability to meet that need. Thus, she contends, she was entitled

---

[2] The court's evidentiary hearing was held on two different days. Husband moved to dismiss the appeal because wife failed to file a transcript for the second day. We previously denied that motion subject to reevaluation upon our considering the merits of the appeal.

to an ongoing, increased award of support. We do not read the trial court's ruling in this fashion. Viewing the trial court's bench ruling and order in light of established principles, we conclude the trial court held that, even if wife proved a certain level of *actual* spending, her decisions regarding that overall level of spending were unwise and the evidence established she had the ability to support herself at the same standard of living the parties had enjoyed *during the marriage*. The trial court noted wife's propensity to "travel[] and do[] other things before the rent [sic] is paid for." It observed she had "at least twice gone back and mortgaged the house and cashed out on the equity of the home," such that the mortgage balance, which had been about $70,000 at the time of the divorce, was over $100,000 higher at the time of the modification proceedings. The evidence in the record established that, at least partially as a result, the monthly mortgage payment on the former marital residence had increased by more than forty percent, from approximately $1,250 in the mid-1990s to almost $1,800 at the time of the support modification proceedings.

The court also noted wife's failure to make any serious attempt to obtain employment or retraining, despite the court's ruling in the 1997 divorce, when wife was forty-three years old, that she was capable of working at least part-time while the parties' then ten-year-old son attended school. Wife, who had a college degree in graphic design, had worked about two years each for two different employers prior to her marriage, in jobs either in her field or closely related to it, and had worked as husband's bookkeeper for about ten years during the parties' marriage, as well. Despite this background, wife admitted that for about thirteen years after the trial court first imputed part-time income of $900 per month to her in 1997, and for about four years after the couple's only child left home to attend college in 2006, she made only one attempt to find employment. That attempt was limited to contacting a few builders she knew to see if they would pay her to provide them with interior decorating services. As a result of that

evidence, the court adopted the opinion of *wife's* vocational expert that, as of 2010, she was capable of earning $2,000 per month or $24,000 per year, and the court imputed income to her in that amount.

Further, it was undisputed on the record that wife inherited $300,000 in 2008. The record supports a finding that wife's inheritance, if properly invested upon receipt, would have generated income of almost as much as the court found wife was capable of earning in the workforce. Wife's own expert, a certified public accountant, testified on cross-examination that wife could have purchased a $300,000 annuity which would have generated a fixed monthly benefit of about $1,500. Thus, the trial court's 2010 findings indicated wife had a monthly earning capacity at that time of $2,000 from employment and $1,500 from investments, for a total imputed income of $42,000 per year.

Wife admitted in her response to husband's motion to terminate spousal support that husband's income "increased significantly [*after*] the date of the divorce," and when the court terminated wife's support, it expressly stated it "look[ed] at the lifestyle [wife] was accustomed to *during* the marriage." (Emphases added). The parties had the same educational background, and although they were married for sixteen years, they resided together as husband and wife for fewer than ten of those years. The trial court found that the "[a]verage normalized net income" from husband's business prior to the parties' divorce was $30,842 and that the business was "in essence identical with [husband]." It found further that during the last several years of the parties' marriage in the 1990s, they supported *three* people—husband, wife, and their son—on husband's annual income of approximately $40,000 per year.

For nine years after the 1997 divorce, wife received almost $2,700 per month in spousal and child support pursuant to the final decree. The court noted at the time of the 1997 decree that its award left husband "financially strapped." Further, although the court had ordered wife

to pay half of son's private school tuition, husband paid wife's half, as well. With the potential employment income imputed to wife by the court in the 1997 decree, wife had a total annual income during that time of $43,127[3] with which to support *two* people—herself and the parties' son—about the same amount the parties had had to support all three of them prior to the divorce.

Finally, the evidence in the record supported a finding that when the trial court terminated spousal support in 2010, it did so because wife had the ability to earn $42,000 per year through employment and investments to support only *one* person—herself. Thus, although the cost of living had increased, the record supported a finding that wife had the same amount of money to support herself in 2010 as the parties had had to support three people—husband, wife, and son—in the 1990s prior to the parties' divorce.

Evidence from the hearing of April 2, 2010, a transcript of which wife failed to make a part of the record, might have provided additional support for the trial court's implicit finding that wife was capable of maintaining herself at the same standard of living the parties had enjoyed during the marriage. Based on the facts of this case as found by the trial court and our review of the record before us on appeal, we cannot conclude the trial court abused its discretion in holding that nineteen years after the parties separated and thirteen years after they divorced, wife was not entitled to ongoing support from husband at a level that exceeded the standard of

---

[3] That income comprised $900 per month in imputed employment income, $2,150 per month in spousal support, and $543.92 in child support. When the parties' son left for college in 2006 and child support was terminated, wife's annual income decreased from $43,127 to $36,600, comprising imputed employment income and spousal support. Wife did not seek an increase in spousal support at that time, and in 2008, she received her $300,000 inheritance. We recognize that child support is not spousal support, and we include the amount of the child support payment in our discussion solely for purposes of illustrating wife's standard of living during the marriage and in the years following the divorce.

living existing during the parties' marriage simply because, three years after the divorce, husband merged his business[4] with another and experienced an increase in his income.

## B.  REFUSAL TO HEAR ADDITIONAL EVIDENCE

After a court has concluded an evidentiary hearing "during which each party had ample opportunity to present evidence, it [is] within the court's discretion to refuse to take further evidence on this subject."  Morris v. Morris, 3 Va. App. 303, 307, 349 S.E.2d 661, 663 (1986). "In order to demonstrate an entitlement to a rehearing, a petitioner must show either an 'error on the face of the record, or . . . some legal excuse for his failure to present his full defense at or before the time of [the court's ruling].'"  Holmes v. Holmes, 7 Va. App. 472, 480, 375 S.E.2d 387, 392 (1988) (quoting Downing v. Huston, Parbee Co., 149 Va. 1, 9, 141 S.E. 134, 136-37 (1927)).  "Because of the need for finality in court adjudications," four requirements must be met before a record can be reopened based upon an allegation of newly discovered evidence:

> (1) the evidence [must have been] discovered after trial; (2) it could not have been obtained prior to trial through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative or collateral; and (4) [it] is material, and as such, should produce an opposite result on the merits at another trial.

Mundy v. Commonwealth, 11 Va. App. 461, 480, 390 S.E.2d 525, 535, aff'd on reh'g en banc, 399 S.E.2d 29 (1990).

Here, the evidence, viewed in the light most favorable to husband, supports the trial court's decision to deny wife's motion to submit additional evidence.  The record clearly supports a finding, contrary to requirement (2) above, that the evidence concerning wife's alleged difficulty finding employment could easily have been obtained, through the exercise of reasonable diligence, prior to the February 4 and April 2, 2010 evidentiary hearings.  Wife had known since 1997, when the parties' son was about ten years old, that the court considered her

---

[4] Wife was compensated for her share of husband's business in the equitable distribution.

capable of working at least part-time and had imputed income to her based on that basis. However, other than to contact a few people she knew in the construction industry, she did not apply for any jobs until after the February 2010 evidentiary hearing, and when she first asked her vocational expert for help locating employment, she admitted she did so because the trial court had asked her at that hearing "why she wasn't working." In 2009, husband's vocational expert assessed wife's employability and opined she was capable of obtaining employment earning $31,000 per year within a short time. Wife's vocational expert opined on July 16, 2009, that wife was capable of earning $18,000 to $24,000 per year within several months of beginning a job search. Thus, although wife knew by July 2009 that her expert believed she was capable of obtaining employment, she did not ask him for help finding employment at that time. Further, all she had done by the time of her expert's deposition on March 23, 2010, was to submit a few job applications and "*start*[] to develop a resume." (Emphasis added). This evidence, viewed in the light most favorable to husband, supported a finding that wife could have obtained her claimed after-discovered evidence prior to trial through the exercise of reasonable diligence if she had begun to look for employment in a more timely fashion.

The record also supports a finding, contrary to requirement (4) above, that the evidence was not such as "should produce an opposite result on the merits at another trial." It was the testimony of *wife's* expert witness the trial court adopted in concluding in 2010 that she was able to obtain employment earning $24,000 per year. Further, wife's expert agreed with the statement that "[wife] would have had a far easier task finding work fourteen years [earlier] . . . than she [would] now" because "[t]he longer the gap in the work history, the more difficult it is to overcome." In light of this evidence, the trial court was not required to alter its finding and conclude wife was incapable of earning the income imputed simply because wife claimed she had tried unsuccessfully to obtain employment between the September 21, 2010 bench ruling and

the filing of her January 28, 2011 motion. Thus, the record supports a finding that wife's proffered new employment evidence, if admitted, would not yield a different result.

In addition, the alleged changes in wife's health did not require the court to hear additional evidence. Given wife's education and employment history, the duration of the parties' marriage, the length of time since they had divorced, wife's receipt of a sizeable inheritance, and the fact that husband also had health problems, the trial court did not abuse its discretion in concluding that an additional evidentiary hearing would not yield a different result and, thus, was not warranted.

C.  HUSBAND'S REQUEST FOR ATTORNEY'S FEES AND COSTS ON APPEAL

When determining the "propriety of an award of attorney's fees for efforts expended on appeal," we "view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

While wife did not prevail on appeal, we hold, based on the entire record, that her position was not so unreasonable as to entitle husband to an award of attorney's fees and costs incurred in this appeal, particularly in light of husband's significantly greater income and earning potential. Therefore, we deny husband's request for an award of fees and costs on appeal.

II.

For these reasons, we hold the court's rulings did not constitute error on the facts of this case, and we affirm. We also deny husband's request for attorney's fees.

Affirmed.

Alston, J., concurring.

I join in the majority's thorough and well-reasoned analysis and the result in this case. I write separately, however to highlight an apparent incongruity in our statutes. As the majority accurately notes, wife waived the argument she makes on brief that the trial court failed to make required written findings under Code § 20-107.1(E)'s factors to support its decision to terminate her spousal support. I agree with the majority's application of Rule 5A:18 on this issue, but had wife properly preserved this argument, a potentially inharmonious application of statutory construction might be presented.

Our statutes and precedents make clear that before a trial court modifies a spousal support award of defined duration pursuant to Code § 20-109(B), it must make certain written factual findings under Code § 20-107.1(E).[5] See Driscoll v. Hunter, 59 Va. App. 22, 35-36, 716 S.E.2d 477, 483 (2011). In contrast, Code § 20-109(A), the statutory framework for modifying a *permanent* spousal support award, allows for termination of permanent spousal support awards "as the circumstances may make proper" without explicitly requiring a trial court to refer to the factors in Code § 20-107.1(E) to support its decision. This Court has construed "the circumstances" mentioned in Code § 20-109(A) to include the remaining sentences of Code § 20-109(A), referring to habitual cohabiting by the recipient spouse, Stacy v. Stacy, 53 Va. App. 38, 42, 669 S.E.2d 348, 350 (2008), and the parties' financial and economic circumstances, Hollowell v. Hollowell, 6 Va. App. 417, 419, 369 S.E.2d 451, 452 (1988) ("The right to spousal support is terminated only by death of either party or remarriage of the dependent spouse, or a

---

[5] Of course, Code § 20-109(B)'s plain language limits its application to "suits for initial support orders filed on or after July 1, 1998, and suits for modification of spousal support orders arising from suits for initial support orders filed on or after July 1, 1998." I do not disagree with the majority's implicit conclusion that Code § 20-109(B) is inapplicable to the case at bar because the suit for the initial support order was entered prior to July 1, 1998, and the spousal support award is not one of defined duration.

change in the financial status of the parties such that support is no longer needed or can no longer be paid.").  Despite the potentially draconian result of terminating a permanent spousal support award, the legislature has not required the same written findings by a trial court when it makes a decision to terminate a permanent spousal support award.  Without a clear legislative direction on this subject, the theoretical incongruity in the analytical framework between Code § 20-109(A) and -109(B) will undoubtedly present issues of significance for this Court to resolve.  For these reasons alone, I write separately to highlight this concern, but otherwise unreservedly concur in the disposition of the majority.