COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, AtLee and Malveaux
Argued by teleconference

DETRAIL JACOBY STIFF

v.      Record No. 1153-20-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RICHARD Y. ATLEE, JR.
OCTOBER 26, 2021

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph A. Migliozzi, Jr., Judge

Henry L. Sadler, III (Sadler & Swan, on brief), for appellant.

Mathew J. Beyrau, Assistant Attorney General (Mark R. Herring,
Attorney General; Robert H. Anderson, III, Senior Assistant
Attorney General, on brief), for appellee.


Detrail Jacoby Stiff appeals his convictions for strangulation, malicious wounding,

burglary, abduction, unauthorized use of a vehicle, and credit card theft. On appeal, he argues

that the trial court erred by denying his motion to reconsider. For the following reasons, we

disagree and affirm the decision of the trial court.

## I.  BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court." Yerling v. Commonwealth, 71 Va. App. 527, 530 (2020)

(quoting Vasquez v. Commonwealth, 291 Va. 232, 236 (2016)).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In March 2017, Stiff called Patricia McVeigh, whom he had known for nearly ten years, and asked if he could stay with her while he looked for a place to live in Norfolk.[1]  McVeigh eventually agreed he could stay for one month, and he moved in on April 1, 2017.  Two weeks later, however, McVeigh called the police and had Stiff removed due to his "erratic behavior" and drug use.  McVeigh still saw Stiff sometimes because he moved only a few blocks away.

On April 30, 2017, McVeigh ran into Stiff when she was on her way to the beach with her granddaughter.  Stiff asked if he could come, and McVeigh agreed.  They stayed at the beach until 4:30 p.m.  When they arrived back at McVeigh's, Stiff left.

Sometime later that evening, Stiff called McVeigh and asked if he could get some of his belongings that he had left there.  She told him that she would leave them outside for him to pick up.  Before she could put his belongings outside, Stiff showed up and started banging on the doors and windows.  McVeigh would not let him in, and she told him she would put his belongings outside if he left.  He left, and she put them outside.  When she looked outside later, the items were gone.  Later, McVeigh walked from her kitchen into her living room and found Stiff sitting on her couch.  She asked him to leave, but she allowed him to use her phone to call for a ride and wait inside until it arrived.

At some point, Stiff attacked McVeigh with a hammer while she was laying on the couch.  When she tried to escape, he tackled her from behind and choked her with his arm around her neck.  She fought back, gouging at his eyes, causing him to release her.  Stiff then took her to a convenience store (in her pajamas) so she could get money from an ATM for him to leave town.  He showed her his gun and told her not to "try anything" or he would kill her.

---

[1] Parts of the record in this case have been sealed.  To the extent that this memorandum opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.

When the first convenience store was too busy, Stiff drove McVeigh to a different store, where he forced her to withdraw cash. After they got back to McVeigh's home, he told her he needed time to get rid of the evidence and get "far away." He told her not to "call the police, ambulance, or anyone to take [her] to the hospital for 24 hours or he would kill [her] family." He then left with her car. Stiff came back to her house around 7:30 a.m. the next morning, claiming he would turn himself in after he got food and medicine for McVeigh. He again left with her car.[2]

McVeigh waited until 8:30 p.m. on May 1, 2017, approximately twenty-four hours after Stiff had threatened her, to call the police. Two officers responded to her home. They called an ambulance for McVeigh, but she elected not to go to the hospital. She provided the officers with a description of her car, and a short time later, the officers spotted the car and stopped it. Stiff was driving, and the officers arrested him.

At trial, McVeigh testified that she did not go to the hospital because the bleeding had stopped, her dogs were at home, and Stiff still had the keys to her house. She explained that she did end up going to the hospital on May 8, 2017. There, they treated her laceration and gave her a CT scan to check for skull fractures. She also testified that she was given two prescriptions: one pain medication and one muscle relaxer.

Stiff testified on his own behalf. He explained that, on the night in question, both he and McVeigh were intoxicated and arguing. He testified that McVeigh started punching him and clawing at him, so he pushed her, and she tripped over her dog and hit her head on the end table. He admitted that he and McVeigh went to the store together, and he explained that McVeigh "acquired a few dollars" for him. He also explained that he came back in the morning because

---

[2] Unbeknownst to McVeigh, Stiff took her debit card when he stopped at her home that morning. She later received a notification that she had only $3 remaining in her account that previously had $800.

he still lived there, and he left to run errands. He testified that he had permission to take McVeigh's car and to use her debit card to buy food.

On cross-examination, the Commonwealth asked Stiff if he had ever "been convicted of lying, cheating, or stealing." He responded that he had a conviction for forgery and uttering with a family member. When asked if he had any other convictions for "crimes involving lying, cheating, or stealing," he said no but he did "plead[] out to a statutory burglary."

Following closing arguments, the trial court found Stiff guilty.[3] The trial court noted that McVeigh was given two prescriptions, but it did not have a medical report in evidence that may have affected her credibility on that issue. But the trial court also mentioned the testimony of detectives describing McVeigh's injuries. The trial court found that Stiff's credibility was affected by his status as a felon and his convictions for forgery, uttering, and statutory burglary.

On February 18, 2020, Stiff filed a motion to reconsider. In it, he pointed out that McVeigh testified that she had been given two prescriptions from the emergency room, but the emergency room medical record supplied by the Commonwealth reflects only one prescription. Stiff also argued that when the Commonwealth asked him if he "had been convicted of specific felonies," he incorrectly stated that he had, even though the presentence report indicated those charges had been reduced to misdemeanors. Accordingly, Stiff asked the trial court to reconsider its decision and find him not guilty. The trial court denied the motion, and Stiff now appeals to this Court.

---

[3] The trial court found him guilty of statutory burglary, malicious wounding, strangulation, credit card theft, abduction, and unauthorized use of a vehicle. It found him not guilty of robbery.

II. ANALYSIS

Stiff argues on appeal that the trial court erred in denying his motion to reconsider. "Motions to . . . reconsider a prior ruling involve matters wholly in the discretion of the trial court." Thomas v. Commonwealth, 62 Va. App. 104, 109 (2013). Therefore, we review the denial of a motion to reconsider for an abuse of discretion. Winston v. Commonwealth, 268 Va. 564, 620 (2004). "Only where reasonable jurists could not differ can we say an abuse of discretion has occurred." Du v. Commonwealth, 292 Va. 555, 564 (2016) (quoting Grattan v. Commonwealth, 278 Va. 602, 620 (2009)).

Stiff argues that the trial court should have granted his motion to reconsider because its decision to convict was based on credibility determinations, and he presented evidence in his motion to reconsider that challenged those determinations. First, he points out that McVeigh testified she had received two prescriptions from the emergency room, but the emergency room medical record indicated that she had been given only one prescription. Second, despite Stiff's testimony that he had multiple felony convictions, the presentence report indicated that all the felony charges had been reduced to misdemeanors. Thus, he argues the trial court's initial credibility determinations were based on incorrect information and his motion to reconsider should have been granted.

But Stiff's right to relief on a motion to reconsider "depends upon his ability to point out some error on the face of the record, or to show some legal excuse for his failure to present his full defense at or before the time of entry of the decree which he seeks to have modified." Thomas, 62 Va. App. at 109 (quoting Downing v. Huston, Darbee Co., 149 Va. 1, 9 (1927)). "Without valid excuse, no party who has had his day in court can reopen the hearing . . . on the mere ground that he wishes to interpose other defenses which he neglected to interpose before such decision was made." Id. at 109-10 (alteration in original) (quoting Holmes v. Holmes, 7

Va. App. 472, 482 (1988)). This "valid excuse" standard requires the moving party to demonstrate that he or she has "exercised due diligence in making the best of prior opportunities to address the issue" or has "obtained newly-discovered evidence that could not have been previously discovered during a reasonably thorough investigation." Id. at 110.

The information in the motion to reconsider either was or would have been available to Stiff at the time of trial with the exercise of diligence. His motion to reconsider makes clear that the Commonwealth did provide Stiff with the emergency room record. Yet, he did not attempt to enter it in evidence or otherwise impeach McVeigh's testimony at trial. Likewise, having knowledge of his own criminal record, he provides no valid explanation for why he did not clarify his responses to the Commonwealth's questions about his criminal record, either then or on re-direct.[4] Stiff provides no explanation or valid excuse for why he was unable to present that information at trial.

Furthermore, Stiff was tried in a bench trial. The trial court was the factfinder responsible for making credibility determinations. See Thorne v. Commonwealth, 66 Va. App. 248, 253 (2016). As such, the trial court was in the best position to determine the significance of the information presented in the motion to reconsider.

Although Stiff was not previously convicted of felonies, he did have multiple misdemeanor convictions, including convictions for crimes involving lying and stealing. It is not unreasonable for the trial court to consider the nature of the convictions (crimes of moral turpitude) rather than the status of the crimes (felony versus misdemeanor) more important in

_____

[4] In his motion to reconsider, Stiff points to his "previously diagnosed mental difficulties" as a reason for his susceptibility to the implication that he had been convicted of a felony. We find this unpersuasive for two reasons. First, the Commonwealth did not ask Stiff about felonies. The Commonwealth asked only if he had convictions for "lying, cheating, or stealing." It was Stiff himself who listed specific crimes. Second, Stiff's counsel had the opportunity to clarify his responses on re-direct examination, and he did not do so.

assessing Stiff's credibility. Furthermore, the trial court, having made the initial credibility determinations, was in the best position to determine what impact, if any, the medical report had on its assessment of McVeigh's credibility. See Montague v. Commonwealth, 40 Va. App. 430, 436 (2003) ("The trier of fact is not required to accept a witness' testimony, but instead is free to 'rely on it in whole, in part, or reject it completely.'" (quoting Rollston v. Commonwealth, 11 Va. App. 535, 547 (1991))). As the trial court noted when it convicted Stiff, there was other evidence in the record to support McVeigh's version of events, including officer testimony, surveillance video, and Stiff's own statements to the police. Accordingly, the trial court was not unreasonable in denying the motion to reconsider.

Stiff did not provide a valid excuse for his failure to present the information in the motion to reconsider during the trial. Nor is the information provided sufficient to demonstrate that the trial court abused its discretion in denying the motion.

### III. CONCLUSION

Because the trial court did not abuse its discretion in denying the motion to reconsider, we affirm Stiff's convictions.

Affirmed.